THE VILLAGE OF MUNDELEIN, Plaintiff-Appellant, *v.* ROBERT EVANGER, Defendant-Appellee.

(No. 70-138;

Second District—April 27, 1971.

Geo-Karis & Thompson, of Zion, for appellant.

Burl F. Nader, of Libertyville, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This appeal arises from the trial court's denial of relief based upon the plaintiff's breach of contract and the further denial of the defendant's alleged counterclaim, also based upon a breach of contract. The plaintiff appealed and one of the defendants, Robert Evanger, cross-appealed.

Plaintiff contends that the trial court's holding was against the manifest weight of the evidence. Defendant, on his cross-appeal, contends that the trial court erred in not allowing his motion to amend the counterclaim and denial of relief prayed for therein.

A bench trial was had upon the pleadings and a stipulation of facts.

In February, 1965, the plaintiff and defendant entered into an oral agreement whereby the plaintiff would approve a proposed plat of subdivision contingent upon the defendant's installation of certain "necessary" sewer and water improvements to all lots prior to their sale.

The subdivision consists of eight lots. Lots 1 and 2 face to the north and front on Charlotte Place. Lots 4 and 5 face to the west and front on Jeanette Place. Lot 3 is the corner lot and Jeanette and Charlotte intersect at its front. Lots 6 and 7 are south of 1 and 2 and east of 4 and 5. These two lots front on a proposed Walker Place *cul de sac*. Lot 8 consists of the undivided portion of the subdivision. The engineer's drawings show that sewer and water were to be provided to Lots 4, 5, 6 and 7, from the Walker Place *cul de sac*. The defendant sold Lot 4. At the time of sale, plaintiff, defendant and the purchasers, mistakenly believed that both water and sewer in Jeanette Place continued to a point south of Lot 4. Relying upon this mistaken belief, defendant reduced the purchase price of the lot at the insistence of the purchasers who desired to tap into the services located in Jeanette Place, rather than from the *cul de sac*. The Village, under the same mistaken belief, issued its building permit without requiring the *cul de sac* improvements to be made. After the purchaser's house was under roof, it was first discovered that the sewer extended just to the middle of Lot 3, which was some 100 feet north of Lot 4. At this time, the purchasers informed the Village of the situation.

The record next discloses that, on September 12, 1967, the Village served notice upon the defendant to install all improvements as soon as possible. Seventeen days later, the Village attorney transmitted a letter to the defendant informing him that the Village had extended the sewer line in Jeanette Place to a point beyond Lot 4 to the front of Lot 5, that the cost of the extension was $1500 and that the defendant was to pay said amount within 10 days. The defendant did not do so. Subsequently, the Village paid its contractor for the extended sewer. The defendant requested the plaintiff to issue building permits so that the *cul de sac* improvements could be installed to service Lots 6 and 7. The plaintiff re-

fused to issue the permits and continued to demand the payment of $1500.

The Village brought suit for the $1500 expended, for punitive damages in the sum of $10,000 and other relief not raised in this appeal.

The defendant's answer contained certain admissions, denials, and affirmative statements and prayed:

"Wherefore, this defendant asks that plaintiff be ordered to allow the public improvements for Lot 6 and 7 in said subdivision to be made forthwith; and that the plaintiff be denied any other relief."

This was followed by an alleged counterclaim which states:

"1. Due to plaintiff's action in refusing to allow the public improvements to be made to Lots 6 and 7 as alleged in the foregoing answer, the costs thereof have now risen and it will not cost more than $2,000 extra to currently complete said improvements.

WHEREFORE, this defendant asks for judgment against plaintiff for $2,000."

Prior to the trial, defendant moved to amend the above by adding the following:

"2. Plaintiff's refusal to allow defendant to make the necessary public improvements for the Walker Ct. *Cul De Sac* was willful and vexatious."

And to add the following request for relief

'For punitive damages of five thousand dollars' "

This was denied by the trial court.

Under the terms of the contract it was the duty of the defendant to install sewer and water to Lots 4, 5, 6 and 7 by way of the *cul de sac* as shown by the engineer's drawings. We are not here faced with a situation where the Village performs on behalf of the defendant under the terms of the initial contract and then demands payment. What in fact happened is that the Village, on its own volition, extended an 8-inch public sewer in Jeanette Place to cover both Lots 4 and 5. This was never contemplated under the terms of the oral contract and amounted to a unilateral modification of it. One party to a contract may not modify its terms unless such modification is mutually agreed upon. *York v. Central Illinois Relief Ass'n* (1930), 340 Ill. 595, 602; *Ellman v. Ianni* (1959) 21 Ill.App.2d 353, 362.

■■ We therefore hold that the trial court, under the circumstances of this case, properly held for the defendant herein. Having reached this conclusion, there is no necessity to answer the plaintiff's contention that it is entitled to punitive damages for a breach of contract.

■■ With reference to the cross appeal, we hold that the trial court had no alternative but to hold for the plaintiff. The quoted portions

above constitute the entire pleadings upon which the defendant relies for recovery. Defendant's answer, after admitting and denying various allegations of the plaintiff's complaint, prays that an order be entered against the plaintiff with relation to Lots 6 and 7. No cause of action is stated upon which such relief could be granted. The defendant then attempts to set forth a counterclaim; however, no cause of action is stated therein. See, par. 38 (3) of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 38 (3).) Having failed to state a cause of action in the counterclaim, defendant's offered amendment thereto was of no avail. Had the defendant properly pleaded, still he could not recover since the necessary element of damages was neither proved nor stipulated to.

For the reasons stated, the trial court's judgment finding in favor of the defendant on the amended complaint and its judgment finding in favor of the plaintiff on the counter-claim are hereby affirmed.

Judgments affirmed.

SEIDENFELD and GUILD, JJ., concur.