The People *ex rel.* George Sterba, Jr., Plaintiff-Appellee, *v.* William
L. Blaser, Director, Illinois Environmental Protection Agency, *et al.*,
Defendants-Appellants.

(No. 59704;

First District (1st Division)—October 6, 1975.

2

William J. Scott, Attorney General, of Chicago (Michael B. Weinstein, Assistant Attorney General, of counsel), for appellants.

Richard F. McPartlin, of Chicago, for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

George Sterba, Jr. (plaintiff), filed suit for *mandamus* against William L. Blaser, Director of the Illinois Environmental Protection Agency, together with other officials of the State of Illinois and the Illinois State Civil Service Commission (defendants). Plaintiff sought reinstatement to his position with the Agency, on the theory that he had been wrongfully dismissed without written charges and a hearing.

Defendants filed an amended motion to dismiss pursuant to section 48(1)(i) of the Civil Practice Act. This section permits the filing of a motion to dismiss the action for the reason "[t]hat the claim or demand asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand." (Ill. Rev. Stat. 1973, ch. 110, par. 48(1)(i).) Defendants' theory, as asserted in their amended motion, was that plaintiff was discharged prior to completion of the required probationary period so that he never attained full civil service status.

After a hearing, the trial court entered an order denying the motion of defendants to dismiss the action. Defendants elected to stand upon their motion. The court granted the relief prayed, reinstatement of plaintiff to his position with the Environmental Protection Agency. Defendants have appealed.

The findings and judgment of the trial court were based upon plaintiff's complaint, the amended motion of defendants to dismiss, supported by an affidavit, and various exhibits appended thereto and an amended response filed to the amended motion by plaintiff, supported by an affidavit made by plaintiff, and various exhibits. The following facts appear from these various documents. On August 25, 1971, plaintiff wrote to the Environmental Protection Agency applying for a civil service position. Plaintiff was interviewed by the Agency on September 4, 1971. Plaintiff was desirous of obtaining permanent, but not temporary, employment. On September 14, 1971, plaintiff took the civil service examination for Environmental Protection Engineer IV. About September 21, 1971, plaintiff was notified in writing by the Department of Personnel that he had passed the examination with final grade of A (described as "excellent") and that his "name has been placed on the eligible list for this title."

On October 8, 1971, plaintiff accepted in writing a written offer of employment to the position he sought. This offer fixed a reporting date of November 1, 1971, and stated the salary plaintiff was to receive. Plaintiff actually did commence work on November 1, 1971. On May 10, 1972, plaintiff received a written notice from the Department of Personnel separating him from the service. This document was marked "Separation

4

—Probationary Discharge". The effective date was stated as May 11, 1972. Typed thereon is the following statement:

"George Sterba has consistently performed at an unacceptably low level of productivity. He has not been able to adjust his work attitude and procedures to match the Agency's policy particularly in the area of communications with facilities under surveillance."

According to these various documents, plaintiff's employment commenced November 1, 1971. His probationary period of six months therefore expired on May 1, 1972. His notice of separation was received by plaintiff on May 10, 1972, effective as of May 11, 1972. Thus all of the information received by plaintiff indicates that his discharge did not occur until after the expiration of his probationary period.

On May 19, 1972, plaintiff's counsel served written notice and demand upon each and all of the defendants setting out the facts from his point of view and also his contention that his probationary period expired at the close of business on April 30, 1972, so that the attempted probationary discharge effective May 11, 1972, was illegal and void. The notice also contained an alternative request that proper charges be filed against plaintiff and that he be given a hearing before the Commission in accordance with the statute. (Ill. Rev. Stat. 1973, ch. 127, par. 63b111.) The Commission sent a response to plaintiff's counsel which denied his request for hearing on the merits of the discharge because "his personal[1] records" revealed that plaintiff had not completed the probationary period and that such a hearing could be granted by the Commission only if plaintiff had "attained certified status."

The material supplied by defendants shows that on November 10, 1971, effective as of November 1, 1971, the Illinois Department of Personnel issued a personnel action report for plaintiff's "Emergency Appointment" to the position of Environmental Protection Engineer IV. In the space reserved for remarks, the document stated, "Due to workload and work schedule while employees are on vacation." As shown, no such qualification or condition was contained upon the offer of employment to plaintiff effective November 1, 1971. It does not appear that the contents of this personnel record were ever disclosed to plaintiff or that he had any knowledge thereof until after the filing of this suit.

The next personnel report which appears was approved November 19, 1971, effective November 11, 1971. It purports to show a change of plaintiff's status from his alleged emergency position with the designation "Separation—Termination Non-Certified". It does not appear that plaintiff was made aware of this document or the contents thereof until

---

[1] Apparently an erroneous spelling of "personnel".

after the filing of this suit. In his affidavit plaintiff stated specifically that at no time prior to or during his service was he informed in any fashion by any representative of the State that he had been appointed or employed as an emergency, temporary, or provisional employee. The affidavit also stated that when he commenced his employment on November 1, 1971, to the best of his recollection, none of the environmental engineers employed in the Chicago office were on vacation and that upon starting such employment he did not take the place or assume the duties of any other engineer.

A list of eligibles maintained by the Department of Personnel shows that plaintiff was second upon the eligible list. The record shows that the one person ahead of plaintiff rejected the offer of employment on October 29, 1971. The listing of eligibles shows selection of plaintiff for the position on November 12, 1971. Again, there is no proof that plaintiff was ever advised of this date as it appears on the document. The offer to plaintiff of employment commencing November 1, 1971, contains no such statement. The personnel records also show a "Probationary Appointment" of plaintiff to his position as Engineer IV effective November 12, 1971. The contents of this document were not disclosed to plaintiff before filing of this suit.

In this court, defendants contend that plaintiff was properly denied a hearing by the Civil Service Commission; this denial of a hearing was a final administrative decision regarding which an exclusive method of review is created by the Administrative Review Act so that mandamus was not a proper remedy. Also defendants alternatively contend that, if mandamus was the proper remedy, the writ should only have directed the Commission to give plaintiff a hearing regarding his discharge. In response, plaintiff urges that, since he completed his probationary period of six months on April 30, 1972, his purported discharge as a probationer, effective May 11, 1972, was illegal. Plaintiff urges that the writ of mandamus was correctly issued because failure of the Commission to grant a hearing was not a final administrative decision subject to review under the Administrative Review Act; since there was no hearing or proceedings before the Commission, the Act was not applicable; having failed to raise the issue of availability of mandamus in the trial court, defendants cannot raise the issue on appeal and, finally, that the attempted discharge of plaintiff as a probationer violated the statute so that mandamus was properly awarded to compel reinstatement.

In our view, resolution of this controversy requires an analysis slightly different than that suggested by the contentions of the parties. The decisive issue here is the status of plaintiff at the time of his discharge.

6

Examination of this question must commence with statutory provisions and the rules of the Illinois Department of Personnel.

The pertinent statute gives the Director of Personnel legal authority to promulgate rules of employment. These rules are to be submitted to the Civil Service Commission and after approval are to be filed in the office of the Secretary of State. "Such rules or any part thereof shall have the force and effect of law." (Ill. Rev. Stat. 1973, ch. 127, par. 63b108.) Rule 2—190b authorizes emergency appointments not to exceed 60 days which are to be made without regard to an eligible list. The statute authorizes a period of probation "not to exceed one year" for newly appointed employees before their appointment shall be complete. During this period the employee may be discharged merely "with the consent of the Director of Personnel." (Ill. Rev. Stat. 1973, ch. 127, par. 63b108.b.6.) Personnel Rule 2—310 creates a probationary period of six months for every employee who enters State service or commences a new period of continuous service.

Quite to the contrary, a duly certified employee may not be removed "except for cause, upon written charges approved by the Director of Personnel, and after an opportunity to be heard in his own defense if he makes written request to the Commission within 15 days after the serving of the written charges upon him." (Ill. Rev. Stat. 1973, ch. 127, par. 63b111.) Rule 2—750 provides that a certified employee who has been served with approved charges for discharge may appeal to the Commission, provided such appeal is made in writing, within 15 days of receipt of such approved charges.

The governing issue thus is a determination of the classification into which plaintiff falls. If plaintiff had not completed his probationary period at the time of his discharge, no written charges and hearing before the Commission were required. If plaintiff had completed his probationary period, he could not be discharged without due notice and a proper opportunity to request a hearing. This appears from the clear language of the statute and it is actually conceded in the reply brief for defendants. Compare *Johnson v. Ogilvie*, 47 Ill.2d 506, 508, 266 N.E.2d 338, citing *Swanson v. Visotsky*, 97 Ill.App.2d 305, 240 N.E.2d 444, to *Powell v. Jones*, 56 Ill.2d 70, 78, 305 N.E.2d 166.

■■ In our opinion, determination of plaintiff's classification is not a factual issue in the case before us. The affidavits submitted by both sides are not factually inconsistent to any degree. Each statement merely supplements the other. According to the documents received by plaintiff, upon which he apparently relied in good faith, he commenced his regular employment on November 1, 1971. This was pursuant to an official statement previously made to plaintiff by defendants in writing about

September 21, 1971, that his name had then been placed on the eligible list. Thus, plaintiff's probationary period of six months expired May 1, 1972. His attempted discharge was not made known to him until May 10, 1972, after he had attained full civil service status. Plaintiff's affidavit is clear and definite that "he was available for permanent, but not temporary employment" and also that he was not notified in any manner regarding any alleged temporary or emergency appointment. These statements are not denied by defendants. They are thus to be taken as true. *Suing v. Catton,* 118 Ill.App.2d 468, 254 N.E.2d 806.

On the contrary, the official documents produced by defendants purport to show that plaintiff's appointment for work, which actually commenced on November 1, 1971, was an emergency appointment made on November 10, 1971. This emergency appointment was then terminated November 11, 1971, and plaintiff's probationary appointment did not commence until November 12, 1971. According to these records, plaintiff's probationary period did not expire until May 12, 1972, therefore, he was properly discharged without official charges and a hearing before the Civil Service Commission.

■■ In our opinion, there is an underlying fallacy in defendants' reasoning which shows the invalidity of their position. Without exception, all of the entries on the documents which constitute the basis of defendants' position, were made *ex parte* and without any notice to or knowledge of plaintiff. This is true in connection with the purported emergency appointment of plaintiff dated November 10, 1971; the purported change of plaintiff's status approved November 19, 1971, effective November 11, 1971, and the date upon the list of eligibles showing plaintiff's selection on November 12, 1971. This type of completely unilateral action should not be permitted to modify the conditions of plaintiff's employment and thus to affect his civil service status. It would indeed be an incredible state of affairs with alarming and indefensible connotations if defendants here, or any other employer, could modify the status of an employee and the terms and conditions of his employment by merely making such entries as they saw fit upon official personnel records.

Neither party has cited any Illinois case as authority on the precise question of the legal effect of unilateral entries made in the employee's personnel record without his knowledge. We have not been able to find any case from other States which deals with this exact problem. Perhaps the closest case is *State ex rel. Hoornstra v. Atkinson* (1940), 136 Ohio St. 569, 27 N.E.2d 249. There, the Supreme Court of Ohio affirmed a judgment granting mandamus to restore relator to her position with the Ohio Bureau of Unemployment Compensation. She passed a civil service examination and on December 1, 1938, the Unemployment Commission

8

appointed her to the post of senior interviewer. The Ohio statute required that a report of this appointment be made to the Civil Service Commission to effectuate the appointment. This report was not made until February 10, 1939. She entered her employment on December 27, 1938, but was discharged summarily on May 10, 1939, on the theory that this was within the probationary period of three months.

The Ohio court held that the statute was directory only and that her term of employment commenced at the time she entered upon her duties so that her discharge without a hearing was not proper. In addition, the records showed an emergency appointment of the relator to the same position on December 28, 1938. This was unknown to her and the court held that she was not a temporary appointee because she did not consent to an emergency or temporary appointment. We note, however, that the rules of the Civil Service Commission of Ohio provided that no eligible person should be certified for temporary appointment unless he had signified a willingness to accept. We find no provision in the Illinois statute for consent by the appointee to an emergency appointment. We find only that the statute authorizes the Illinois Director of Personnel to prepare rules pertaining to emergency appointments for a period not to exceed 60 days to be made without regard to eligible lists. (Ill. Rev. Stat. 1973, ch. 127, par. 63b108b.8.) However, despite this difference we note that the court in the cited case gave important weight to the date upon which relator actually commenced her duties as constituting the commencement of the probationary period. In the case before us, plaintiff actually commenced his service on November 1, 1971. So far as the record shows, plaintiff never desired temporary or emergency employment and had no notice of such appointment. Also, plaintiff performed identical services without modification until May 11, 1972, when defendants attempted his discharge. The averments in his affidavit that none of the Environmental Engineers were on vacation when his employment started and that during his employment he did not take the place of, or assume the duties of, any other engineer are uncontroverted by defendants. Thus, it would appear that plaintiff did actually serve his full probationary period and performed the full duties of his office for that entire time.

Another case which may possibly be helpful is *McGillicuddy v. Civil Service Com.*, 133 Cal.App. 782, 24 P.2d 942, decided by the court of appeals of California in 1933. There, the court affirmed declaratory relief for seven plaintiffs who were city employees. All plaintiffs took and passed the necessary examination. Each was appointed from an eligible list and worked continuously for long periods of time in excess

of the probationary period of six months. However, the Commission listed their employments as temporary and they were accordingly certified and appointed. They were then successively reappointed to the same positions. The court held that their positions were not temporary and that, since they had discharged their duties for periods of time in excess of the maximum probationary period, they had acquired civil service status.

Aside from these authorities, approaching the problem from a contractual point of view, it is elementary that no contract can be modified or amended in an *ex parte* fashion by one of the contracting parties without the knowledge and consent of the remaining party to the agreement. (See *Village of Mundelein v. Evanger*, 132 Ill.App.2d 179, 181, 269 N.E.2d 325, citing *York v. Central Illinois Mutual Relief Ass'n.*, 340 Ill. 595, 602, 603, 173 N.E. 80 and *Ellman v. Ianni*, 21 Ill.App.2d 353, 362, 157 N.E.2d 807.) This same rule should apply to any labor or employment contract. We conclude that plaintiff had full civil service status prior to the date of his attempted discharge.

It remains to consider the points raised by defendants regarding application of the Administrative Review Act and whether *mandamus* was a proper legal remedy. Plaintiff answers these contentions by urging the accepted doctrine that these issues were not raised by defendants in the trial court. Consequently, as appellants here, defendants have waived these points and may not raise them at this time. (*Kravis v. Smith Marine, Inc.*, 60 Ill.2d 141, 147, 324 N.E.2d 417.) However, in the case before us, no evidence was taken and the cause was decided upon the pleadings and affidavits of the respective parties. These additional issues raised by defendants involve only matters of law which have been briefed and argued by both sides. Neither additional affidavits nor testimony would change the situation. (Compare *Hux v. Raben*, 38 Ill.2d 223, 230 N.E.2d 831, cited in *Cronin v. Delta Air Lines, Inc.*, 19 Ill.App. 3d 1073, 1077, 313 N.E.2d 245.) Under these circumstances, in the case at bar, we prefer to consider the points thus raised.

Defendants next contend that mandamus is not the proper remedy here but, since the Civil Service Commission has denied plaintiff a hearing, plaintiff should have proceeded by administrative review, the exclusive remedy available to him. This is rather an anomalous contention. In the attempted discharge of plaintiff, defendants elected to proceed under the statutory provision relating to employees on probation who "may with the consent of the Director of Personnel, be discharged * * *." (Ill. Rev. Stat. 1973, ch. 127, par. 63b108b.6.) Defendants persisted in this although they should have been aware that the docu-

ments and matters upon which they depended to show that the period of probation had not been completed were never communicated to plaintiff in any manner.

When plaintiff by his counsel demanded in writing that proper charges be filed against him and that he be given a hearing before the Commission, the Commission expressly stated in its response that such a hearing could be granted only if plaintiff had completed his probationary period and had attained certified status. This position is utterly inconsistent with the contention they now advance. Defendants have placed themselves in the untenable situation of having expressly denied plaintiff that remedy which they now claim he should have invoked.

■■ The posture of defendants in this court is legally correct only if we reason from the premise that plaintiff was a fully certified employee. In such case, defendants should have proceeded to make written charges against plaintiff and to give him an opportunity for a hearing before the Commission within 15 days after service thereof. (See Ill. Rev. Stat. 1973, ch. 127, par. 63b111.) In such case the proper, and in fact the exclusive, remedy for plaintiff would have been the timely filing of a written request for hearing before the Commission and, in event of an unfavorable final disposition there, to proceed by way of administrative review. This is clearly set forth in *People ex rel. Naughton v. Swank*, 58 Ill.2d 95, 101, 102, 317 N.E.2d 499, citing the equally applicable decision in *Chicago Welfare Rights Organization v. Weaver*, 56 Ill.2d 33, 38, 39, 305 N.E.2d 140.

It must also be considered that we are not dealing here with a final administrative decision by the Civil Service Commission which is subject to review under the Administrative Review Act. The pertinent statute provides that "[a]ll final administrative decisions of the Civil Service Commission hereunder shall be subject to judicial review pursuant to the provisions of the 'Administrative Review Act' * * *." Immediately after this language the legislature provided that "[t]he term 'administrative decision' is defined as in Section 1 of the 'Administrative Review Act'." (Ill. Rev. Stat. 1973, ch. 127, par. 63b111a.) Section 1 of the Administrative Review Act defines the pertinent phrase "administrative decision" as follows (Ill. Rev. Stat. 1973, ch. 110, par. 264):

> " 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency."

We do not have, in the case before us, a "decision, order or determination of any administrative agency rendered in a particular case." We

have simply a piece of correspondence in which the Commission specifically refuses to entertain proceedings and refuses to make any decision, order or determination. Further, in the case before us, the Commission has requested dismissal of the cause in the trial court on the ground that plaintiff had no right to take proceedings before it so that plaintiff was not entitled to any decision, order or determination from it. The letter in response to plaintiff's notice and participation in the motion to dismiss constitutes all of the action ever taken by the Commission in this situation.

Plaintiff here was discharged by virtue of an order issued by the Environmental Protection Agency. He was not discharged by any action of the Civil Service Commission. The letter by the Commission was written after plaintiff's termination had become an accomplished fact although contrary to law. (Compare *People ex rel. Vestuto v. O'Connor*, 351 Ill.App. 539, 544, 115 N.E.2d 810.) Under these circumstances mandamus was the proper remedy.

■■ There is authority in Illinois for permitting plaintiff to proceed with the action here even though it may have been couched in mandamus terms rather than submitted as an action for declaratory judgment. Our courts are becoming increasingly flexible in being guided more by the rights of the parties than by the form of remedy involved. (See *Chestnut v. Lodge*, 34 Ill.2d 567, 216 N.E.2d 799, cited in *Lenard v. Board of Education*, 26 Ill.App.3d 188, 190, 191, 324 N.E.2d 657.) We need not depend upon this principle since we are dealing here with a set of facts which is typical of the traditional mandamus action. Since plaintiff had attained full civil service status, he was legally entitled to written charges and a hearing as provided by law. His discharge was a denial of this right. He has a clear legal right to be placed in his proper legal position by reinstatement. See *People ex rel. Heydenreich v. Lyons*, 374 Ill. 557, 567, 568, 30 N.E.2d 46.

In view of the foregoing there is no need for us to consider and to differentiate the various authorities cited in this regard by defendants and commented upon in plaintiff's brief. No one of these cases, nor all of them collectively, requires a result different than that reached above. *People ex rel. Chicago & North Western Ry. v. Hulman*, 31 Ill.2d 166, 201 N.E.2d 103; *People ex rel. Dever v. Wilson*, 107 Ill.App.2d 223, 246 N.E.2d 863, and *People ex rel. Ryan v. Civil Service Commission*, 117 Ill.App.2d 50, 253 N.E.2d 913.

The final contention raised by defendants is that the writ of mandamus should not require the reinstatement of plaintiff but should only direct the Civil Service Commission to give plaintiff a hearing regarding his discharge. The order appealed from found that plaintiff is entitled to re-

12

instatement together with back pay less deductible earnings received by him in other employment. In our opinion, this disposition by the trial court was entirely proper. Since plaintiff was entitled to reinstatement, he was entitled to be made whole as regards the salary due him. In addition, the proper method for starting the legal machinery to determine whether plaintiff is to be discharged is by service of charges upon him by defendants in accordance with statutory law. This may readily be done by defendants, if they so desire, immediately after plaintiff's reinstatement.

In their reply brief, defendants for the first time raise the issue that the judgment order should not have made any provision regarding back pay. This point was not raised by defendants in the trial court nor in this court prior to the filing of their reply brief. Accordingly it is waived and will not be considered here. Supreme Court Rule 341(e)(7), Ill. Rev. Stat. 1973, ch. 110A, Rule 341(e)(7); *Crane Construction Co. v. Symons Clamp & Manufacturing Co.*, 25 Ill.2d 521, 527, 185 N.E.2d 139.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

BURKE, P. J., and SIMON, J., concur.