(No. 91-CC-3478—)

GARY D. KIRBY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 4, 1994.*

HARRIS, LAMBERT, HOWERTON & DORRIS (ERIC W. KIRKPATRICK, of counsel) for Claimant.

ROLAND W. BURRIS, Attorney General (ALIX E. ARMSTEAD, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimant, Gary D. Kirby, seeks damages against the Respondent, State of Illinois, for lost wages, vacation and sick days, health insurance premiums, loss of driving privileges, attorney's fees, costs, and interest on back wages. Claimant was an employee of the Illinois Department of Transportation. He started in July of 1984. Claimant was employed as a maintenance laborer working on the highways in Johnson County. Part of his duties required him to drive State trucks for hauling and picking up supplies.

On January 17, 1990, while driving a State truck, Claimant was involved in a serious motor vehicle accident, resulting in the deaths of two people in another vehicle. Claimant was charged with failure to yield by way of a traffic ticket issued by an Illinois State trooper.

Claimant went to court on his traffic ticket without taking a lawyer with him. Claimant testified that he thought he was going to be represented and had been led to believe that he was going to be represented "mostly" by

Bill Corse. Claimant identified Bill Corse as a Department of Transportation person who takes care of accidents "and stuff over at Carbondale." Claimant had talked to Bill Corse several times before his trial. These conversations took place at the Vienna Yards where Claimant reports to work. Claimant testified that he discussed the charges against him on the ticket with Corse and discussed the fact that they would be going to court. Claimant testified that he asked Bill Corse if Corse thought he needed an attorney. Claimant testified that the best he could recall and believed was that the words of Bill Corse were, "I can't see no reason, Gary, of why you would need an attorney." Claimant testified that he relied upon Bill Corse.

When Claimant attended traffic court, he was accompanied by Bill Corse, Bill Owens and Orval Hague. Claimant identified Bob Owens as a technician at the yards and Orval Hague as second in command over there (Department of Transportation at Carbondale), but said "I ain't for sure." Claimant testified that when they arrived at the courtroom and just before they went into the courtroom, Bill Corse told the Claimant that if the judge asked the Claimant to testify, to tell the judge that he had been advised by counsel not to testify. Claimant did not testify at the trial on the traffic ticket, although the judge asked him if he wanted to. He informed the judge that he had been informed by counsel not to testify. An eyewitness to the accident testified, and a reconstruction witness named Roger Walker testified. Claimant was convicted of failure to yield and paid a fine on April 18, 1990.

After the conviction, Claimant had a discussion with Bill Corse and Dennis Mathis, who was identified by Claimant as his supervisor. Claimant testified that Bill Corse "brought a law book down" and read things to Claimant. Claimant had advised Bill Corse that Claimant

was thinking about trying to get a new trial and Bill Corse advised him that he could be fined "a big amount of money." Claimant told Bill Corse that if Claimant lost his driver's license, "they're going to fire me." Corse purportedly told Claimant that he would not be fired and would not lose a day's work. Claimant emphasized that Corse told him "You won't lose a day's work. We'll put you flagging. We'll put you mowing right-of-ways and stuff that you won't have to drive." Claimant testified he relied on what Corse told him. No appeal of the conviction or request for new trial was filed.

Claimant did not know what Bill Corse's duties with the Department of Transportation were in regard to investigating accidents or what his actual job title or job description was. On the date of the accident, the chain of command for the Claimant was as follows: his immediate supervisor or "lead" worker was Dennis Mathis; Bob Owens was the technician supervising Mathis; and Orval Hague supervised Bob Owens. Don Grammer was over Hague, and the district engineer, Mr. Jennings, was the head of district 9. Claimant guessed that Bill Corse was not in that chain of command in any way. Claimant had had prior dealings with Bill Corse when Corse taught a defensive driver's course, and Claimant had seen Corse down at the Vienna Yards two or three times. Claimant did not know Corse's professional background but thought that Corse could represent Claimant in court. Claimant thought Corse was an attorney, although Corse never told Claimant he was an attorney.

Claimant's driver's license was then suspended by the Secretary of State effective June 26, 1990. When Claimant received the notice, Claimant told his superiors that he would be losing his license on June 26, 1990. Two or three days before the suspension date, Claimant testified

he was approached by Bob Owens who handed him a piece of paper and told Claimant, "You're going to have to take 90 days leave of absence," and wanted the Claimant to sign for the leave of absence. Claimant signed the paper. Claimant testified that he figured that if he had not signed the paper, he would be fired. The 90-day suspension was without pay.

Claimant filed for a hearing on his license suspension through the Office of the Secretary of State, assisted by Bill Corse and Bob Owens who took Claimant to the Marion, Illinois, driver's license facility. Prior to the hearing, Claimant hired Gordon Lambert as his attorney, who attended the hearing before the Secretary of State's representative in Mt. Vernon, along with Claimant.

Claimant and his attorney appeared before hearing officer Fred Knoche and participated in the hearing at which Claimant testified along with several others.

The findings and recommendations of the hearing officer were sent to the Claimant. The hearing officer's recommendations were predicated in major part upon proof that Claimant's vision was obstructed at the intersection where the accident occurred. The hearing officer recommended recision of the order of suspension of Claimant's driver's license. Later, in an order dated September 12, 1990, the Secretary of State adopted the findings of the hearing officer, but did not adopt the recommendations of the hearing officer. However, the Secretary of State granted Claimant's petition for the issuance of an employment-restricted driving permit permitting Claimant to operate a vehicle at work from 7:00 a.m. until the conclusion of his employment in the evening.

An appeal of the order of the Secretary of State was perfected by Claimant to the circuit court of Sangamon

County. After Claimant and his attorneys appeared before the Sangamon County circuit court judge, an order was entered December 20, 1990, reversing the order of the Secretary of State.

The State of Illinois took an appeal from the decision of the Sangamon County circuit court judge to the appellate court of Illinois for the fourth judicial district and sought an extension of time within which to file the State's brief. The State ultimately moved to voluntarily dismiss the appeal. An order of dismissal was entered on May 10, 1991.

Claimant's driver's license was suspended for nine months. The suspension was to expire March 26, 1991. After the suspension, Claimant received his driver's license back. Claimant did not drive at all from June 26, 1990, through the latter part of September 1990 and during that period of time was not allowed to work for the Department of Transportation. Claimant received his work permit on September 24, 1990, and returned to work the following Monday to the same job where he has worked ever since. During the suspension, Claimant would have earned $1,279 gross every two weeks through July 1, 1990. Thereafter, a raise went into effect which would have raised Claimant's gross pay to $1,339 every two weeks. Claimant believes that during the summer he would have received overtime, but was not able to testify to the amount of overtime he would have received.

Claimant testified he lost one day short of three month's pay with all but four or five days being at a higher rate. Claimant lost 3.7 vacation days and 3 sick days. Claimant was required to pay for insurance normally covered by the State totaling $1,162.62 from which $493.86 would be deducted as premiums from his paychecks had he received them.

Claimant testified he sustained a hardship during the time he was not allowed to drive and necessarily incurred attorney's fees and expenses. Claimant's evidence established the following monetary losses:

(a) Claimant's gross lost wages totaled $8,607.86;

(b) Claimant lost 6.8 paid sick and vacation days which should be valued at a gross loss of employment benefits at the rate of $133.97 per day for a total of $911;

(c) Claimant was required to pay $443.38 for family insurance benefits which would otherwise have been paid by Respondent but for Claimant's absence;

(d) Claimant suffered emotional trauma and inconvenience by not being able to drive during the suspension of his license;

(e) Claimant incurred attorney fees and expenses in the sum of $3,625 as fees and $142.75 as costs for a total of $3,767.75.

Claimant further testified that after the accident, he was made party to a civil action for money damages. He was served with papers in the civil action before he returned to work for the Department of Transportation during the time that he was off work. Claimant requested representation be provided to him through the State of Illinois and he was represented by an assistant Attorney General. The case went to trial and a verdict was rendered against the Claimant.

A week or two after Claimant was convicted on the traffic ticket, he hired Gordon Lambert as his attorney. Claimant incurred the responsibility to pay attorney fees in the sum of $3,625 and out-of-pocket costs in the amount of $142.75.

Claimant advances two theories of recovery. First, he argues the law of the case, and second, he argues a breach of employment contract. Claimant argues that the ruling of the Sangamon County circuit court is the law of the case. He argues that the circuit court has ruled that the Claimant's driver's license should never have been suspended and that the suspension was unjustifiable, causing Claimant to lose wages and benefits because he was not allowed to work without a driver's license. Implicit in Claimant's argument are the propositions that Respondent advised Claimant not to seek an attorney to defend the traffic ticket in the first instance and that Respondent lulled Claimant into a false sense of security by representing to Claimant that he would never lose a day's work if he lost his driver's license.

In response to Claimant's first theory of recovery, Respondent suggests that Claimant knew his job was conditioned upon maintaining a valid driver's license and Respondent acted in accordance with Claimant's best interest in suggesting a leave of absence from his employment rather than other more severe options, such as loss of employment. Respondent also argues that it could not foresee that the suspension of Claimant's driver's license would be overturned by the circuit court of Sangamon County and believed it acted in the best interest of the Claimant. Finally, Claimant was not forced to request a leave of absence but simply and correctly followed the advice of fellow employees. Respondent's brief is as bereft of the citation of authority on this theory of recovery as is the brief of the Claimant.

Claimant was charged and convicted of a traffic offense in the Williamson County circuit court. That conviction has not been appealed or overturned. There is no evidence before the Court to suggest the conviction was

not proper. Pursuant to State law and the authority vested in the Secretary of State pursuant to State law, the driving privileges of the Claimant were suspended. (625 ILCS 5/6—206.) Also, pursuant to State law, that suspension was reviewed both administratively and by the Sangamon County circuit court and was rescinded. The January 10, 1991, circuit court order reversing the Secretary of State's position does not state that the suspension was wrongful or that it never should have been entered. The decision indicates the hearing officer's findings were supported by the evidence and the law. The hearing officer found the evidence presented sufficient grounds to rescind the suspension. The hearing officer made no finding that the suspension was wrongful or never should have been entered. Claimant's license was suspended on June 26, 1990. The hearing officer's decision was mailed September 12, 1990. The Secretary of State's order granting a work permit was entered September 12, 1990. The Department of Transportation, as the employer of Claimant, was not a party to the proceedings in the Williamson County circuit court, nor was the Department of Transportation, as an employer of Claimant, a party to the proceedings before the Secretary of State or the Sangamon County circuit court. Claimant cannot seek a recovery against Respondent under a theory predicated upon the advice given to the Claimant by persons whom Claimant perceived to be his superiors in the Department of Transportation, nor can the Claimant properly assert Respondent's liability on the basis that an apparent employee of the Department of Transportation did not affirmatively advise Claimant that he was not an attorney.

This Court has long held that those who deal with the State are presumed to know the law and deal with the State at their own peril. It was the duty of Claimant to establish the actual authority of the agents of the State.

(*Melvin v. State* (1989), 41 Ill. Ct. Cl. 88.) Claimant presented no proof as to the authority of Mr. Corse, Mr. Owens or Mr. Hague. Claimant was charged with a traffic offense which resulted in the death of two people. Claimant presented no evidence or testimony that he was ordered not to obtain legal counsel of his own choosing. Claimant hired an attorney within the time to file a motion for new trial or appeal but apparently did not seek a new trial or appeal. Claimant's argument, without authority or evidentiary support, appears to be that the State was determined to wrongfully suspend the Claimant's driver's license, and that accordingly, Respondent is liable for Claimant's damages sustained, including lost wages as a result of his leave of absence and other damages. No authority is found to support this argument. Indeed, if this argument were to prevail, then any State employee who lost employment or employment benefits upon conviction of criminal or traffic offenses could, upon reversal of the conviction or dismissal of the charges, be in a position to sue the State for losses so sustained as an indirect result of such charges and proceedings. This is not the law and the argument must fail.

Claimant's second theory of recovery is based upon breach of an express employment contract. Claimant asserts that the terms of a contract cannot be modified *ex parte* by one party, without the knowledge of the other party, including employment contracts. He cites *People, ex rel. Sterba v. Blaser* (1975), 33 Ill. App. 3d 1. *Sterba, supra,* arises from a situation where an employee of the Illinois Environmental Protection Agency filed a suit for mandamus against the director and others seeking reinstatement to his position with the agency on the theory that he had been wrongfully dismissed without written charges and a hearing as required by his civil service status. Defendant

filed a motion to dismiss which was denied. Defendant elected to stand on their motion to dismiss. Judgment was entered for the plaintiff and the appeal followed. Factually, the defendants sought to deny plaintiff's civil service status which would require a hearing and opportunity to be heard before the Civil Service Commission as a result of unilateral notations made by the defendants in plaintiff's personnel file. There was a notation that plaintiff's employment was an "emergency appointment." Further, there was a notation that plaintiff's "probationary appointment" did not commence until 12 days after he began his actual employment. Plaintiff was not made aware of these notations. The court held, in essence, that the "notations" in plaintiff's personnel file, made without his knowledge, constituted an attempt on the part of the defendants to modify plaintiff's employment contract in an *ex parte* fashion, without the knowledge and consent of the plaintiff. The holding in the *Sterba* case is not compelling in the case at bar.

Claimant does not dispute that a class "C" driver's license was an essential requirement for his continued employment. The need for a driver's license was not a condition imposed on Claimant's employment in an *ex parte* fashion by the Respondent. Claimant argues that the State unilaterally modified the Claimant's employment contract by taking work hours away from him that he otherwise would have been entitled to work because he did not possess a valid driver's license. During the period of Claimant's leave of absence, Claimant did not have a valid driver's license which, admittedly, was a requisite to Claimant's employment in the first instance, and to continued employment by the State at all other times. No change of Claimant's contract was effected by Respondent. Claimant voluntarily took a leave of absence for 90 days. He was actually off work for less than 90 days.

The Court also finds that Claimant failed to exhaust his administrative remedies by failing to file a grievance pursuant to section 4—13 of the personnel policies and procedures manual.

For the foregoing reasons, the claim of Claimant is denied.