(No. 20179.—

LUCY E. YORK, Appellee, *vs.* THE CENTRAL ILLINOIS MUTUAL RELIEF ASSOCIATION, Appellant.

*Opinion filed October 25, 1930.*

CAMPBELL & GRAHAM, for appellant.

GREEN & PALMER, (HENRY I. GREEN, GEORGE E. MARTIN, and ORIS BARTH, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Lucy E. York brought an action of assumpsit against the Central Illinois Mutual Relief Association in the circuit court of Champaign county. The defendant pleaded the general issue and special pleas, but the condition of the pleadings is immaterial in view of a stipulation of the parties that the cause be tried by the court without a jury upon the stipulated facts, which constituted all the evidence in the case, and that the question whether any cause of action or defense was shown should be determined by the court without reference to the state of the pleadings. A judgment was rendered for the defendant, and the Appellate Court reversed the judgment, rendered a judgment against the defendant for the amount of the policy and interest, and granted an appeal upon a certificate of importance.

The stipulation showed that the appellant is a corporation organized prior to September 24, 1923, under the Corporation act of 1872, as a corporation not for pecuniary profit, and on September 24, 1923, issued a benefit certificate to John M. York for $1000, to be paid upon his death to his wife, Lucy E. York, upon the conditions stated in the policy; that he paid one dollar for this certificate and thereafter all contributions for death benefits or of any other character requested of him by the company, which were twenty-six in number before November 14, 1927, and

amounted to $38.50; that prior to November 14, 1927, at the request of the Department of Trade and Commerce the corporation delivered to the department its old articles of incorporation and they were marked "canceled," and the corporation filed with the director of the Department of Trade and Commerce a declaration, signed and acknowledged by a majority of its board of directors, of its desire to re-incorporate under its existing corporate name under the provisions of an act passed June 27, 1927, to incorporate mutual benefit associations on the assessment plan, intended to benefit the widows, orphans, heirs and devisees of deceased members thereof and members who have received a permanent disability. With the declaration was filed also a certificate of association required of associations proposing to organize under the provisions of that act. This declaration and certificate were approved by the director of trade and commerce and a certified copy of them was filed in the recorder's office of Champaign county, where the principal office of the company was situated, all as required by section 15 of the act for the incorporation of such associations.

On December 3, 1927, John M. York paid the death benefit assessment No. 27 levied on account of the death of Nellie M. Thompson on October 6, 1927, and of Allen Duncan on October 9, 1927, written notice of the assessments having been given to him by the appellant under date of November 15, 1927. On December 30, 1927, a new certificate bearing that date was issued to York, and with it the following notice was transmitted to him:

"*To our members*—We herewith hand you the new form of policy, which is in accordance with the requirements of the insurance department of the State of Illinois. We suggest that you keep the old certificate as well as the new one, for reference. There is no change in the amount of the certificate."

The first certificate issued in 1923 was very short. At its head appeared, "No. 1046A." It merely certified that John M. York was a member of the association, and upon

satisfactory proof of his death the association would pay to Lucy E. York, his wife, $1000, provided that he had fully complied with the by-laws and regulations of the association, and further, that should one contribution amount to less than $1000, then there should be paid only a pro rata of said sum as realized from the contribution. The certificate contained no conditions. At the head of the new certificate were the words, "This replaces A-1046." The certificate provided for the payment of $1000 to Lucy E. York on receipt of due proofs of the death of John M. York, and stated that "the conditions, provisions and benefits upon the following pages hereof are a part of this contract as fully as if recited over the signature hereto affixed." The following pages contained many conditions, none of which appeared in the original policy. Among them was the following:

"*Suicide*—Self-destruction within one year from the date hereof, while sane or insane, is a risk not assumed under this certificate, and in such event the liability hereunder shall be limited to the amount of assessments paid by the member."

After December 30, 1927, York paid assessments to the amount of five dollars—the total amount of all assessments requested of him subsequent to December 30, 1927. The only application made by him for benefit certificate in the company is the one set forth in the plaintiff's declaration. He died September 9, 1928, a suicide. Proof of death was made as required by the rules of the association, and it tendered the beneficiary the sum of five dollars in satisfaction of the amount due, which was refused.

In 1927 section 29 of the act of 1872 concerning corporations, under which the appellant was incorporated, was amended so as no longer to authorize the organization of mutual benefit associations similar to the appellant under that section, and section 31 was amended at the same time so as to provide that such mutual benefit associations theretofore organized under that act should not, after the amend-

ment became effective, engage in the business for which they were incorporated, except that they might retain their corporate existence for six months for the sole purpose of winding up their business or re-incorporating under some act the enforcement of which came within the jurisdiction of the Department of Trade and Commerce. (Laws of 1927, p. 366.) At the same time the act was passed entitled, "An act to incorporate mutual benefit associations on the assessment plan, intended to benefit the widows, orphans, heirs and devisees of deceased members thereof and members who have received a permanent disability and to provide for and regulate the control of such associations and to provide penalties for violation of the provisions thereof." (Laws of 1927, p. 583.) By section 15 of this act it was provided: "Any existing domestic corporation transacting business under an act entitled, 'An act concerning corporations,' approved April 18, 1872, as a corporation not for pecuniary profit, for the purpose of benefiting the widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where the member shall receive no money as profit or otherwise except for permanent disability; and all associations engaged in the business of insurance of lives of its members and not subject to any other of the insurance laws of this State, shall re-incorporate under its existing corporate name, or a corporate name selected for that purpose in accordance with this act under the provisions of this act upon filing with the director of trade and commerce, a declaration of its desire to do so, signed and duly acknowledged by a majority of the board of directors, trustees or managers, together with a certificate of association as required of associations proposing to organize under the provisions of this act. Upon receipt of such declaration and certificate of association, the director of trade and commerce shall examine same and if he shall find that such certificate of association is not inconsistent with the provisions of this act he shall

cause same to be recorded in a book to be kept for that purpose and shall furnish the association a certified copy of such declaration and articles of association, which thereupon shall be filed and recorded in the recorder's office of the county where the original certificate of such association is recorded, and such corporation shall thereupon be deemed to be incorporated under the provisions of this act."

By its compliance, as has been stated, with the provisions of this section, as shown by the stipulation, the Central Illinois Mutual Relief Association became re-incorporated by the same name, and by its certificate of association all the assets of the original association became the property of the association as re-incorporated, which also assumed all the liabilities of the original corporation. It was expressly declared that all of the members of the corporation should *ipso facto* become members of the association and the association should issue to each such member a certificate of membership. The purpose of these provisions was to effect the continuation of the organization in so far as possible. So far as the record indicates, no change occurred in the organization, management or control of the association or in its directors, officers or members. There was no change of name, no alteration of assets, no variation of liability and no change of relations between the association and its members. The only purpose of the amendment to the Corporation act was to prevent the future organization under that act of mutual benefit associations on the assessment plan and the continuance in business of such associations as had theretofore been organized. The object of the passage of the act for the incorporation of such mutual benefit associations, section 15 of which required such corporations organized under the Corporation act and all associations engaged in the business of insurance of lives of its members and not subject to any other of the insurance laws of this State, to re-incorporate, was to subject all such associations to the insurance laws of the State and

to visitation and inspection by the director of trade and commerce. It is manifest from the language of section 15 that the legislature in the use of the word "re-incorporated," in permitting the use of the existing corporate name by the incorporated association and in prohibiting corporations organized under the Corporation act from engaging in or continuing their business except to the extent of retaining their corporate existence for six months for the sole purpose of winding up their business or re-incorporating under some act the enforcement of which was under the jurisdiction of the Department of Trade and Commerce, regarded the action of a corporation organized under the Corporation act in re-organizing in compliance with the new law for the incorporation of mutual benefit associations as substantially a continuation of the existence of the association, with the same assets and liabilities but subject to the requirements of the new act. This was the view taken of the effect of this legislation in the case of *Jones* v. *Loaleen Mutual Benefit Ass'n*, 337 Ill. 431. In that case the certificate of association of the re-incorporated association in regard to the transfer of the assets and assumption of all the liabilities of the original association by the re-incorporated association was in the same language as in this case, and it was held that the certificate of membership issued to the member by the old association was a contract to pay a sum of money at the time of his death provided he paid the assessments as they became due, and under the terms of this contract the association had no right to cancel it and the legislature had not the right to interfere with the contract. It was also held that the provision in this certificate of the new association taking over all the assets of the old association and assuming all its liabilities was made freely and voluntarily for the purpose of re-incorporation and was not forced upon the association by the director of the department, and that it was within the power of the association to insert in its certificate of association the provision declaring that all the

members of the original incorporation should *ipso facto* become members of the re-incorporated association.

The supposed error of the Appellate Court which is the basis of the appellant's claim for a reversal of its judgment was in not finding that when John M. York, the assured, accepted the benefit certificate dated December 30, 1927, he accepted it in lieu of the original certificate and consented to the additions to and changes in the terms of the original certificate which were contained in the new and became bound by all the provisions of the new certificate, including the condition that self-destruction within one year from the date thereof is a risk not assumed. This argument is based upon the assumption that York, by continuing payments of his assessments after receiving the new certificate, accepted it as the contract between himself and the association and consented to be bound by all its terms. The case of *Jones* v. *Loaleen Mutual Benefit Ass'n, supra,* differs from this in the circumstance that although a new certificate had been issued it had not been delivered to Jones in his lifetime, but it was expressly held that even if it had been delivered he would not have been bound to accept it in lieu of the old certificate. The association could not alter the terms of his contract without his consent.

There is no doubt that the parties to a contract may by their mutual agreement accept the substitution of a new contract for the old one with the intent to extinguish the obligation of the old contract, but one party to a contract cannot by his own acts release or alter its obligations. The intention must be mutual. The new certificate bore the statement, "This replaces A-1046," and the old certificate was "No. 1046A," but the notice was of no effect. The holder of the certificate was under no obligation to pay any attention to the notice, for his certificate could not be altered without his consent. Moreover, it was accompanied by a notice that it was a new form of policy which was in accordance with the requirement of the insurance department of

the State. The suggestion was made that he keep the old certificate as well as the new for reference, and it was stated that there was no change in the amount of the certificate. There was no reference to any change in the policy, and the holder of it knew that neither the association nor the insurance department had any authority to make any change without his consent. After the re-incorporation he had paid an assessment on December 3 for two deaths accruing before the re-incorporation, and he continued after receiving the new certificate on December 30 to pay all assessments made, and, so far as the record shows, all these assessments, whether before or after the re-incorporation, were made and collected in the same way. There is no evidence that he had any knowledge of any change in the certificate. He continued to make payment of the assessments as he was required to do under his original certificate, and the appellant had no reason to suppose, so far as this record shows, that he was not continuing to pay under his old certificate, or that he was paying under the new certificate and thereby indicating an intention to accept the changed terms of the new certificate. He had a right to make the payment required of him under his original certificate, and nothing more was required of him to maintain its obligation intact. To show a novation and an acceptance of the new certificate as a substitute for the old the burden was on the appellant to show that York, with actual knowledge of the terms of the new certificate, made his payments with the intention of accepting those terms and not in continuation of the original certificate. Knowledge of the terms of the new certificate when he made the payments was not sufficient to show an acceptance of those terms, for he had the right to disregard those terms and make the payments in accordance with the provisions of the old certificate. It was therefore necessary to prove an intention to acccept the terms of the new certificate.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*