**Thaddeus GOODWYN**

v.

**SENCORE, INC.**

**Civ. No. 73–4055.**

United States District Court,
D. South Dakota.

Feb. 5, 1975.

Carleton R. Hoy, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for plaintiff.

Gale E. Fisher, May, Johnson & Burke, Sioux Falls, S.D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

This is an action in the nature of contract which was tried to the Court on July 24, 25, 1974, in Sioux Falls, South Dakota. The plaintiff, Thaddeus Goodwyn, a citizen of the state of Pennsylvania, brought this action against Sencore, Inc., a corporation incorporated under the laws of Delaware with its principal place of business in the state of South Dakota, to recover damages for an alleged breach of an employment contract that was entered into between the plaintiff and defendant. The jurisdiction of this Court is based upon diversity of citizenship and the requisite jurisdictional amount. 28 U.S.C. § 1332(a).

During the year of 1970 and up until June of 1971 Thaddeus Goodwyn was in the employ of General Electric Company in the capacity of an electrical engineer. During at least part of the year of 1970 the plaintiff was stationed in Sunnyvale, California, working on one of General Electric Corporation's projects. Sometime during the end of 1970 General Electric Corporation finished its California project, wherefore the plaintiff would be required to relocate back to the G. E. plant at King of Prussia, Pennsylvania. The plaintiff, instead of moving his family directly to Pennsylvania, decided to move his family to the Sioux Falls area upon the completion of the California project. The plaintiff then continued back to Pennsylvania where he remained in the employ of General Electric, with his family remaining in Canton, South Dakota, where the plaintiff's wife had grown up.

Sometime late in the fall of 1970, or the spring of 1971, the plaintiff saw a newspaper advertisement placed by Sencore, Inc. which described job possibilities for engineers in the Sioux Falls area. The plaintiff contacted Sencore, Inc., by telephone, with respect to the possibilities of their employing more engineers. Pursuant to a telephone conversation with an employee of Sencore, Inc., an appointment was established for April 9, 1971. On April 9, 1971, the plaintiff appeared at Sencore's office in Sioux Falls, South Dakota, and was interviewed by a Mr. Baum, who is the vice president of the corporation and the director of engineering. Mr. Baum testified that one of his responsibilities was the interviewing and hiring of engineers for Sencore, Inc. During this interview the plaintiff filled out an application for employment with Sencore, gave Mr. Baum a resume of his prior job experience and took a company electronics examination. After the completion of the examination it would appear that Mr. Goodwyn and Mr. Baum engaged in some general conversation about the job and its responsibilities. However, no specific offer was made by the corporation to employ Mr. Goodwyn at that time.

A short time after the initial interview Mr. Goodwyn's wife called the Sencore Corporation and established a second interview, scheduled for May 18, 1971. On this date Mr. Goodwyn again returned to Sioux Falls to the corporation's headquarters and had a conversation with Mr. Baum, at which time Mr. Goodwyn was offered a job with the Sencore Corporation to begin immediately, however by mutual agreement the starting date was changed to June 28, 1971. During the May 18 interview the plaintiff and Mr. Baum discussed the terms of plaintiff's employment, however, there is a conflict as to the substance of that conversation. Mr. Baum, on direct examination, testified that the plaintiff was informed of the trial period of four weeks before there would be a permanent assignment with the corporation, while Mr. Goodwyn testified on direct examination that there was no mention of a trial period at the May 18, 1971, meeting. Mr. Goodwyn testified that his first knowledge of the trial pe-

riod was on June 28, 1971, the day that he began work with Sencore, Inc., when he was handed the trial period stipulation (defendant's exhibit 5) and an employee's withholding exemption certificate (defendant's exhibit 4). There is also a conflict in the testimony of Mr. Goodwyn and Mr. Baum as to the salary which Mr. Goodwyn would receive from Sencore, Inc. Mr. Goodwyn testified that at the May 18, 1971, meeting, he was asked by Mr. Baum what salary he would require to work for Sencore, Inc., to this Mr. Goodwyn stated that he was interested in a salary somewhere in the $19,000–$15,000 range. Mr. Goodwyn further testified that Mr. Baum offered him a year's employment for $15,000, which Mr. Goodwyn said he would accept. Mr. Baum testified that there was some discussion of the rate at which Mr. Goodwyn would be compensated, and Mr. Baum made a notation on the plaintiff's application for position (defendant's exhibit 1) which shows Mr. Goodwyn's starting date and the notation "@ 15 M" which Mr. Baum testified meant that Mr. Goodwyn would be compensated at a rate of $15,000 per year.

The testimony further indicated that Mr. Goodwyn terminated his employment with General Electric Corporation and commenced working for Sencore on June 28, 1971, and was assigned to the service department. About an hour after he was on the job, Mr. Baum approached Mr. Goodwyn with an employee's withholding exemption certificate (defendant's exhibit 4) and a trial period form (defendant's exhibit 5). Mr. Goodwyn testified that this was the first time that he had been advised of the trial period form, and contends that there was no mention of any trial period when the previous interview and offer of employment was made, and said that he took particular issue with the first paragraph of the trial period form which states as follows:

All new Sencore employees will be given a four-week trial period before being permanently assigned. (They will be informed of this trial period at the time of interview, and before advising them of their selection to work for Sencore).

Mr. Goodwyn testified that he told Mr. Baum that since he had no knowledge of the trial period that he would not sign defendant's exhibit 4, however, Mr. Goodwyn testified that Mr. Baum told him that unless he signed the trial-period form he would not be able to be paid, and that therefore he reluctantly signed it. Mr. Baum on direct examination testified that he did not receive Mr. Goodwyn's signature on the trial-period form until June 28, 1971, the first day of plaintiff's employ, however he disagrees with the fact that Mr. Goodwyn did not have knowledge of the trial period until that date.

After four weeks had passed, Mr. Goodwyn met with Mr. Baum and they had a conversation concerning his performance in the service department. At this time Mr. Baum assigned Mr. Goodwyn to engineering and was given a specific task to build an R.F. Attenuator as a component in an AM–FM stereo analyzer, which Sencore was developing. Mr. Goodwyn testified that there was a conversation at the end of the four-week period, however, he disagrees with Mr. Baum's testimony that a new four-week trial period was provided and agreed upon by the parties. During the second four weeks Mr. Goodwyn worked on the development of the R. F. Attenuator and various progress reports were made (defendant's exhibit 12).

On August 20, 1971, approximately eight weeks after Mr. Goodwyn began his employment with Sencore, Inc., he had a meeting with Mr. Baum, at which meeting he was told that the corporation was not satisfied with his work and he would not be permanently assigned as an engineer with Sencore. On August 20, 1971, Mr. Goodwyn was given a separation notice signed by Mr. R. E. Baum, (defendant's exhibit 6) which states the reason for separation as "discharged", and under remarks states, "Could not finish a project."

After leaving the employ of Sencore, Inc., Mr. Goodwyn testified that he tried to gain employment in the area with several different organizations, including the South Dakota Employment Service, all of which indicated that there was no need at that time for the employ of anyone in an engineering capacity. Being unsuccessful in locating a job with a firm in South Dakota, Mr. Goodwyn testified that he began working on some ideas that he had for the marketing of various electronics devices. Mr. Goodwyn tried unsuccessfully to develop various fire detector and warning devices for use in nursing homes and farms, and lost a considerable amount of money in this endeavor. Finally in the fall of 1972 Mr. Goodwyn was able to secure a job which would start in January of 1973 with his old employer General Electric Corporation.

■ The first issue this Court must decide is whether or not a contract was entered into between Mr. Goodwyn and Sencore, Inc., which was for a definite specified term of one year. It is uncontroverted by the evidence that there was no written contract in the present case. The plaintiff therefore relies upon the conversations had between Mr. Baum and himself, and a statutory presumption codified in 60-1-3 of the South Dakota Compiled Laws (1967). The presumption that is created by S.D.C.L. § 60-1-3 is as follows:

A servant is presumed to have been hired for such length of time as the parties adopt for the estimation of wages. A hiring at a yearly rate is presumed to be for one year; a hiring at a daily rate, for one day; a hiring by piece work, for no specified term.

The plaintiff, by his testimony, urges the position that he was hired at a yearly rate of $15,000, which is borne out by the notation made by Mr. Baum on defendant's exhibit 1. The defendant, on the other hand, argues that the presumption established has been defeated by the evidence of the plaintiff's execution of the trial period form (defendant's exhibit 5), along with Mr. Baum's

testimony that Mr. Goodwyn was informed of the probationary period, which would not place Mr. Goodwyn in a position of permanent employment until the end of that trial period. Thus, the Court is faced with diametrically opposed testimony from each of the respective sides of this litigation. Upon reviewing the evidence and demeanor of the witnesses it is the conclusion of this Court that Mr. Goodwyn on his May 18, 1971, interview was offered a job for a period of one year at the rate of $15,000 per year, which offer he accepted, and at that time was not informed of the four-week probationary period.

■■ In reaching this conclusion the Court is fully aware of the fact that Mr. Goodwyn executed the trial period form (defendant's exhibit 5), however, the Court does not find that the plaintiff's execution of this document defeats the presumption created by S.D.C.L. § 60-1-3. The tender of this document to Mr. Goodwyn upon his first day of work and the testimony of Mr. Goodwyn that he was informed that his name could not be placed upon the payroll until he executed the document can hardly be said to be an acknowledgement of the trial period. This reasoning would similarly apply to the argument by the defendant that if a contract was formed by the discussions had on May 18, 1971, then the execution of defendant's exhibit 5 constituted a modification of the contract entered into. Under any reading of contract law it could hardly be argued that a contract could be modified without the mutual consent of the parties. Thus, in a situation where an employee has terminated his employment with his former employer in reliance upon a new contract for employment, and during his first day on the job with the new employer is informed that unless he signs a probationary form his name will not be placed upon the employment rolls, nor will he be paid, it can hardly be argued that there has been a mutual consent to the modification of the prior contract.

This Court having determined that a contract for a definite specified term of

one year existed between the plaintiff, Mr. Goodwyn, and Sencore, Inc., it must now be determined whether the defendant terminated the plaintiff's employment because of incapacity to perform. In regards to this defense the defendant relies upon S.D.C.L. § 60-4-5 which provides as follows:

> An employment even for a specified term may be terminated at any time by the employer for habitual neglect of duty or continued incapacity to perform or any willful breach of duty by the employee in the course of his employment.

In positing this defense the defendant relies upon the testimony that established the fact that Mr. Goodwyn was unable to complete the project given to him of designing and developing an R.F. Attenuator during the second four weeks of his employment with the defendant. This Court has neither been directed to nor through its own research been able to discover a South Dakota case which deals with the burden of proof that must be met when one of the parties to an employment contract has terminated the contract for "continued incapacity to perform." The majority of jurisdictions take the position that in an action for an alleged wrongful discharge the burden rests upon the employer to prove that the employee has breached the contract and that the discharge was based upon a legal excuse. See, LaFontaine v. Developers and Builders, Inc., 261 Iowa 1177, 156 N.W. 2d 651 (1968); Zeller v. Prior Lake Public Schools, Ind. School District #719, 259 Minn. 487, 108 N.W.2d 602 (1961); Johnson v. Jessop, 332 Mich. 501, 51 N.W.2d 915 (1952); Saari v. George C. Dates and Associates, 311 Mich. 624, 19 N.W.2d 121 (1945); Stoffel v. Metcalfe Construction Co., 145 Neb. 450, 17 N.W.2d 3 (1945). The question here, then, is whether the defendant has carried its burden of proof and established that Mr. Goodwyn's discharge was based upon his continued incapacity to perform the project that was assigned to him during the second four weeks of his employment with Sencore, Inc.

As previously stated, the defendant relies primarily on the plaintiff's failure to complete, or make substantial progress in the completion of the R.F. Attenuator assignment that was given to him during his second month on the job with Sencore. Based upon the testimony of Mr. Baum, vice president in charge of engineering of Sencore, Inc., this was the basis for the discharge of Mr. Goodwyn, as is indicated by the notation on the separation notice (defendant's exhibit 6). On the cross-examination of Mr. Baum, however it was established that the R.F. Attenuator was not successfully developed and marketed by the defendant until nineteen months after Mr. Goodwyn was discharged, and also that the frequency range of the R.F. Attenuator was less than the specifications given to Mr. Goodwyn in his development and work on the project.

This Court is in full agreement with the theory and purpose of S.D.C.L. § 60-4-5, in that no employer should necessarily be required to keep in his employ an individual who is unable because of incapacity to fulfill the functions of his specified job, however, in the present case the defendant has not met its burden of proof of showing that Mr. Goodwyn was incapable of performing the functions for which he was hired. This finding of fact is based upon the clear evidence which shows that the specifications that were given to Mr. Goodwyn to complete were never totally perfected, and that it took the defendant's Engineering Department over four times as long as Mr. Goodwyn was given to complete the project. Thus, this Court can find no legal excuse within the meaning of S.D.C.L. § 60-4-5 for the termination of Mr. Goodwyn's employment contract.

This Court having reached the decision that a breach of contract did occur in the forced termination of Mr. Goodwyn's employment, it must now deter-

mine the final issue of the amount of damages that are to be awarded to the plaintiff. The general measure of damages for breach of contract is found in S.D.C.L. § 21–2–1 which states as follows:

For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

■ The first item of damages that the plaintiff prays for is the balance of the one-year contract of employment, which amounts to $12,750.00. Of course, in order to recover this amount the plaintiff has the burden of proving that he was unable through the use of reasonable diligence of securing similar employment, and therefore mitigating the damages that would accrue under the contract. This Court is satisfied that the plaintiff was diligent in his efforts to find substitute employment during the balance of the contract period. As previously stated in this Court's Memorandum Opinion, the plaintiff immediately upon his discharge from the defendant's employ, made several unsuccessful attempts to find an engineering, job within the state of South Dakota, including inquiries to the South Dakota Employment Service, South Dakota State University, Raven Industries, the EROS and ERTS federal projects in Sioux Falls, South Dakota, and I. D. E. A. (Industrial Development and Expansion Agency). Therefore, it is this Court's finding that the plaintiff is entitled to the amount of $12,750.00 from the defendant as to this item of damages.

■ During the conduct of the trial testimony was adduced from witnesses for the plaintiff as to the amount of money the plaintiff expended and lost in the unsuccessful attempt to market several electronic items built and designed by the plaintiff after he was unsuccessful in securing employment as an engineer. Although this Court appreciates the situation that plaintiff was in, in trying to support his family when he was unable to secure employment as an engineer, however, this Court does not believe that this item of damage was proximately caused by the breach of contract nor was it in the ordinary course of things likely to result from the breach of contract.

■ The final item of damages that the plaintiff prays for are the expenses incurred in his relocation in Pennsylvania after securing a job with General Electric in 1973. In this category the plaintiff lists various types of expenses including the maintenance of separate housing for his family in Canton, South Dakota, while plaintiff was employed in Pennsylvania, expenses incurred in hunting for a house in Pennsylvania, loss of the appraised value of an anticipated house in Pennsylvania had he moved there in 1971, and the increased interest expense of purchasing a home in Pennsylvania in 1973, as compared to 1971.

In passing on this item of damages this Court is guided by S.D.C.L. § 21–1–5 which states as follows:

Notwithstanding the provisions of these statutes, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in the cases specified in statutes providing exemplary damages or penal damages, and in statutes relating to damages for breach of promise to marry, for seduction, or wrongful injuries to animals.

The very terms of this statute, on its face, do not permit a court to award a

person a greater amount in damages than he could have gained by the full performance of the contract. Big Band, Inc. v. Williams, S.D., 202 N.W.2d 121 (1972).

Had the contract not been prematurely terminated the plaintiff would still have had to bear the cost of the expenses itemized in this category of damages.

The final question to be decided by this Court is whether the plaintiff should be awarded prejudgment interest. South Dakota law permits the allowance of pre-verdict interest. S.D.C.L. § 21–1–11 provides:

> Interest awarded on damages certain. —Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

There is no question in this Court's mind that the cause of action maintained by the plaintiff falls within the interpretation of the above-quoted statute. *See*, Beka v. Lithium Corp. of America, 77 S.D. 370, 92 N.W.2d 156 (1958); Peter Kiewit Sons' Company v. Summit Construction Co., 422 F.2d 242 (8th Cir. 1969); White Motor Corp. v. Northland Insurance Co., 315 F.Supp. 689 (D.S.D.1970). In the present case, the balance of the employment contract, that is, $12,750.00 was reduced to a sum certain at the end of the contract term, June 27, 1972, and interest on that amount is awarded from that date at the rate of 6% per annum.

The foregoing Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The prevailing party shall prepare the necessary judgment to effect the foregoing decision by the Court.