Michael SIMPSON, d/b/a Delta Enterprises, Plaintiff,

v.

NORWESCO, INC., a Corporation, Defendant.

Civ. No. 76–4077.

United States District Court, D. South Dakota, S. D.

Dec. 6, 1977.

Gale E. Fisher, of May, Johnson & Burke, Sioux Falls, S. D., for plaintiff.

**1104**

Michael F. Pieplow, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., and Edward J. Parker, of Lindquist & Vennum, Minneapolis, Minn., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This was an action to recover commissions allegedly owed to the plaintiff as a result of a breach of the employment contract by the defendant. The case was tried to a jury from June 20 to June 22 of 1977. At the conclusion of the three day trial the jury returned a verdict of $90,381.68 in favor of the plaintiff. Based on this verdict plaintiff petitions this court for an award of pre-judgment interest. On the other side, defendant has moved that this court grant a motion for judgment notwithstanding the verdict or in the alternative grant a new trial.

As mentioned by the defendant in its brief, there is little dispute as to the essential facts surrounding this matter. Plaintiff, Michael Simpson, was employed as a sales manager for Raven Industries. At Raven, plaintiff sold spray tanks to customers in this area. Rotonics, a division of defendant Norwesco, wanted to establish itself as a competitive force in this market. Plaintiff's expertise and exclusive knowledge of customers in this area was attractive to the defendant. As a result, on July 28, 1970, plaintiff entered into a written contract with Rotonics wherein plaintiff agreed to act as Rotonics' manufacturer's representative for polyethylene spray tanks. (Plaintiff's Exhibit No. 1).

The employment agreement contained two terms critical to this lawsuit. First, the agreement provided that plaintiff would receive a commission of 10% on sales of proprietary sprayer tanks, a commission of 6% on sales to a certain specified customer, Campbell Manufacturing, and a commission of 6% on sales of custom sprayer tanks. In addition, the agreement provided that it was "terminable at the will of either party upon six months written notice."

The parties were able to operate under this agreement for approximately two years before serious problems developed. After this period of time, however, the economic picture began to appear unsound for Rotonics. Rotonics was facing intense competition in the agricultural sprayer tanks market. (Plaintiff's Exhibits 6, 7). Faced with increased deficits in the Rotonics Division, it became apparent to the management of Norwesco, the parent corporation of Rotonics, that losses would have to be cut in order for that division to remain in business. Plaintiff's Exhibit No. 11). The evidence was inconclusive as to the cause of the losses within the Rotonics Division. Although such losses were blamed on the stiff competition alone, there was testimony suggesting poor management in terms of unfulfilled deliveries as well as losses attributable to an inordinate amount of defective products. (Plaintiff's Exhibits 13, 14).

Although the cause of Rotonics' economic malady was unclear, the evidence is lucid as to who was expected to bear the brunt of the curative measures: the plaintiff, Michael Simpson. Consequently, defendant reduced plaintiff's commission rate on sales of proprietary tanks from ten percent to seven percent. As a *partial* offset to this reduction, defendant increased plaintiff's commission on sales to Campbell Manufacturing from six percent to seven percent and increased plaintiff's commissions on sales of custom tanks from six percent to seven percent.

Plaintiff was informed of this change in commission rates by letter from David Baldwin, president of Norwesco, dated August 10, 1972. (Plaintiff's Exhibit No. 11). In response to this information, plaintiff sent a letter to Mr. Baldwin on August 28, 1972. (Plaintiff's Exhibit No. 12). In this letter plaintiff expressed several of his complaints regarding the operation of Rotonics. He concluded the letter by rejecting any commission reduction and reserving his rights under the original agreement:

"I plan to continue with the same efforts in accordance with the terms of the original agreement."

Following receipt of Simpson's reply, Norwesco management communicated no statements to Simpson to indicate that if he did not accept the reduction he would be terminated. There is no evidence that in fact he was given the specific directive of accepting the reduction or terminating his employment. Under the terms of the contract any such notice of termination by Norwesco required a six month written notice. Plaintiff did, however, receive monthly commission statements and checks that reflected the changed commission rate.

Despite the cut in plaintiff's wages, Rotonics continued to lose money. Once again Norwesco management sought to alleviate this deficit by cutting Simpson's wages. Therefore, in September of 1974 plaintiff's commission rate on proprietary products was cut to 5%. Plaintiff's commission rate on custom sales remained at 7%. Plaintiff contends that again he refused to acquiesce in the unilateral wage cut. He relied on his letter of August 28, 1972, in which he specifically rejected any wage reduction and reserved his rights under the original agreement. Again Norwesco presented no hard alternative to Simpson of either accepting the reduction or considering his contract terminated.

During the fall of 1974, discussions were conducted between Rotonics and Simpson concerning the possibility of drafting a new written contract of employment to replace the contract presently in force. These new contract discussions and negotiations focused primarily on the life of the possible contract and its language regarding the termination clause. These discussions, however, never achieved a meeting of the minds and no new contract was ever signed. Plaintiff's employment with Rotonics continued.

Finally, Rotonics was sold by Norwesco to Solar, Inc., and Mr. Simpson's employment relationship was terminated. This was in 1976. (Plaintiff's Exhibit No. 26). The notice of termination referred to the employment agreement of July 28, 1970.

Defendant asserts four grounds to support its motion for JNOV. It is contended that (1) the court should have instructed as a matter of law that Simpson's continued employment after notice that Norwesco intended to cut his commission rate constitutes acceptance of the new commission rate by Simpson; (2) the court should not have instructed as to reservation of rights as the law does not recognize this right by a party in an employment situation such as this; (3) the court should have found as a matter of law that plaintiff is estopped from making his claims at this time for lost wages; and (4) the court should grant a new trial because of the prejudicial error involved in the court's ruling admitting into evidence Exhibit 35.

A motion for judgment N.O.V. cannot be granted unless as a matter of law the opposing party failed to make a case and a verdict in the movant's favor should have been granted. *Anderson v. United States,* 561 F.2d 162 (8th Cir. 1977); *Davis v. Burlington Northern, Inc.,* 541 F.2d 182, 186 (8th Cir. 1976), *cert. den.* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976). In considering such a motion, this Court must view the evidence in the light most favorable to sustaining the verdict and give the opposing party the benefit of every reasonable inference that may be drawn from the evidence. *Anderson v. United States, supra,* at 11; *Russ v. Ratliff,* 538 F.2d 799, 804 (8th Cir. 1976).

In considering defendant's motion for judgment N.O.V., this Court must consider Illinois law as controlling. The 1970 written agreement between the parties provided in section 12 that the agreement would be "construed in accordance with the laws of the State of Illinois." (Plaintiff's Exhibit 1).

"(W)here a contract provides that the rights and obligations of employer and employee should be governed by the laws of a particular state, such a contract is valid if it is not contrary to the public policy of the forum. . . ." 1A *Moore's Federal Practice* Sec. 0.311(1) at p. 3411. Here, a consideration of Illinois law by this court does not appear to be offensive to South Dakota law.

■ After careful consideration of defendant's motion, I do not believe that the moving party has sufficiently demonstrated that the jury verdict should be disregarded. This court remains convinced that there was ample evidence to present a jury question on the alteration of the contract and plaintiff's reservation of rights.

■ It is elementary under contract law that the modification of a contract requires mutual consent. This is true because, in essence, what is being done is the substitution of a new contract for the pre-existing agreement. This principle of contract law has been expressly followed by the courts in Illinois. In *York v. Central Illinois Mutual Relief Association*, 340 Ill. 595, 173 N.E. 80, at 83 (1930), the Court noted:

> There is no doubt that the parties to a contract may by their mutual agreement accept the substitution of a new contract for the old one with the intent to extinguish the obligation of the old contract, but one party to a contract cannot by his own acts release or alter its obligations. The intention must be mutual.

This rule has been held applicable "to any labor or employment contract." *People ex rel. Sterba v. Blaser*, 33 Ill.App.3d 1, 337 N.E.2d 410, 416 (1975).

Here evidence was presented that there was no mutual consent to the contract alteration. In fact, plaintiff's case was premised on the assertion that the change in the original contract regarding the commission rate was totally unilateral. Certainly, plaintiff's letter rejecting the change in commission rate in which he stated that he was "continuing under the terms of the original contract" does not mean that plaintiff accepts the modification.

Also, unlike the situation in several of the cases cited by the defendant in his brief supporting this motion, plaintiff was never specifically told to either accept the modification or quit. The subsequent negotiations on a new contract that were conducted between the parties strongly suggests that those were not the only two options open to the plaintiff. Moreover, once plaintiff expressly voiced his rejection of the modifica-

tion, defendant never replied that this option of reserving his rights under the original contract was unavailable to the plaintiff and unacceptable to the defendant.

There is no question that under the terms of this unilateral contract, once defendant was notified that plaintiff would not accept the change in commissions defendant had the option of terminating plaintiff by six month written notice. Evidently, defendant considered plaintiff too valuable to do that. From this evidence the jury properly found that no modification of the original contract was mutually agreed upon by the parties. This determination by the jury is further supported by the fact that when plaintiff was finally terminated some four years later the representative of defendant company made specific reference to the original contract of July, 1970. No reference was made to any superseding contract or modifying agreement.

To support its contention that the Court should have instructed that plaintiff's continued employment after notice of the commission cut constituted acceptance of the new rate as a matter of law, defendant relies heavily on *Weiss v. Duro Chrome Corp.*, 207 F.2d 298 (8th Cir. 1953). That case, in which the Eighth Circuit Court of Appeals upheld the jury verdict, is clearly distinguishable from this matter. There the original contract between the parties specifically authorized the employer to change the commission rates without giving prior notice to the employee. Therefore, in *Weiss, supra,* no mutual agreement was necessary to change the commission rate because such a change did not constitute a revision of the original agreement. Rather, any change was accomplished through the terms of the original agreement. This was not the case here.

■ *Weiss, supra,* is also distinguishable in that there the employee made no protest of the change in commissions at the time he was so notified. For over a year he accepted and cashed checks from the employer based on the lower commission rate without complaint. Unlike that situation, the plain-

tiff here explicitly rejected the change at the time that the employer first notified him of the defendant's intentions. In light of this evidence, defendant's argument that the acceptance of checks by the plaintiff computed on the employer's revised commission rate constitutes acceptance of the contract modification is not well received. Plaintiff's explicit written rejection of the modification cannot be eradicated by the mere acceptance of these checks without more.

The evidence properly presented a jury question. In *Drake v. Hercules Powder Co.,* 5 Terry 69, 44 Del. 69, 55 A.2d 630, 632 (1947), the defendant also contended that plaintiff's acceptance of his monthly pay check without complaint constituted an acceptance of the employer's modification of the contract. The court did not agree and held that the issue of whether an employment contract was modified by mutual agreement presented a matter of evidence. In *Ferries v. Copco Steel & Engineering Co.,* 344 Mich. 345, 73 N.W.2d 850 (1955), the court reached a similar determination that a jury question was presented. The Court noted:

> Where the parties to a contract terminable at the will of either party carry on unsuccessful negotiations for a modification of the original contract and the employment is later continued on the basis of the old agreement, the attempted modification will not have the effect of a termination of the contract limiting the employee's recovery to that time. *Ferries, supra,* at 853.

Here the defendant pleaded the affirmative defense of accord and satisfaction. In *Cieslak v. Dahlstrom Machine Works, Inc.,* 19 Ill.App.3d 995, 312 N.E.2d 654 (1974), the Illinois Appellate Court reversed a trial court's directed verdict for the defendant in a suit brought by a manufacturer's representative to recover commissions. There the court held that plaintiff's acceptance and endorsement of a check based on lower commissions did not constitute accord and satisfaction even though nothing was written on the check.

This Circuit has similarly recognized that the question of whether an accord and satisfaction was reached usually presents a question of fact. *See Geeslin v. Knight Bros., Inc.,* 554 F.2d 865, 866 (8th Cir. 1977); and *U. S. v. Aetna Casualty & Surety Co.,* 480 F.2d 1095, 1098 (8th Cir. 1973).

Defendant also contends that the Court should not have instructed on reservation of rights as the concept of "explicit reservation of rights" is contained in the Uniform Commercial Code and therefore has no application to an employment situation such as this. I do not agree. Defendant raised the doctrine of accord and satisfaction in its defense. The jury was instructed accordingly. That defense raises the issue of reservation of rights. As the court recognized in *School v. Tallman,* 247 N.W.2d 490 (S.D.1976), an explicit reservation of rights will prevent the application of accord and satisfaction. Therefore, this Court would have been remiss to instruct on accord and satisfaction as requested by defendant and fail to instruct on reservation of rights.

Defendant's third contention is also without merit. Defendant argues that the Court should have found as a matter of law that plaintiff is estopped from making his claim for lost wages. This goes to the heart of the lawsuit. It involves notice as well as the subjective intent of the parties. This Court properly instructed the jury in this regard and therefore formed part of the jury's consideration in reaching the verdict. I will not disregard that decision.

Finally, defendant bases his motion on the evidentiary ruling admitting plaintiff's exhibit 35 into evidence. This cartoon was part of the correspondence between the parties. Besides reference to the cartoon in correspondence, there was significant oral testimony at trial concerning that cartoon. For the reasons stated at trial this Court properly admitted the exhibit and at this time will not grant defendant's motion on that basis.

For all of the reasons stated above defendant's motion for JNOV or, in the alternative, a new trial is denied.

As a result of the $90,381.68 jury verdict returned in favor of the plaintiff, this Court is now asked to award the plaintiff pre-judgment interest. Unlike the previous issues discussed, Illinois law does not control the resolution of the issue of pre-judgment interest. The Court's consideration of plaintiff's right to pre-judgment interest does not involve a construction of the agreement between plaintiff and defendant. Rather, the issue of whether or not plaintiff is entitled to pre-judgment interest is a substantive matter controlled by the law of the state where the cause of action arose. *Bott v. American Hydrocarbon Corp.*, 458 F.2d 229, 231 (5th Cir. 1972). Both parties have conceded that as to this issue, South Dakota law applies.

S.D.C.L. 21–1–11 provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt.

The application of that statute to an action involving the breach of an employment contract was involved in *Goodwyn v. Sencore, Inc.*, 389 F.Supp. 824 (D.S.D.1975). There, where the court found a breach by the employer of the contract, pre-judgment interest was permitted. The contract was found to be for one year at an annual rate of $12,750. The employee had been dismissed after only 8 weeks of the contract term. The court, upon these facts, granted pre-judgment interest from the date of the end of the year contract.

In the present case, the balance of the employment contract, that is, $12,750.00 was reduced to a sum certain at the end of the contract term, June 27, 1972, and interest on that amount is awarded from that date at the rate of 6% per annum. *Goodwyn, supra*, at 831.

If the conditions of S.D.C.L. 21–1–11 are satisfied, plaintiff is entitled to recover pre-judgment interest at the rate provided for in S.D.C.L. 54–3–4, which is 6%. In this case, I consider those conditions satisfied. The mere fact that the claim is disputed does not defeat the allowance of interest. *Corcoran v. Halloran*, 20 S.D. 384, 107 N.W. 210 (1906). In the principal case in this state interpreting the pre-judgment interest statute, the South Dakota Supreme Court stated, "interest is allowable on damages if there exists established or reasonably ascertainable market prices or values of the subject matter by reference to which the amount due may be determined by computation." *Beka v. Lithium Corporation of America*, 77 S.D. 370, 92 N.W.2d 156, 157 (1958).

Here the amount of the commissions due plaintiff is readily ascertainable. The amount of interest owing is merely a mathematical computation. This computation, however, is made more difficult in that the total amount due was a cumulation of certain amounts owing at each pay period. Therefore, in calculating the interest, a debt arises at each pay period in the amount that the check given plaintiff is reduced by commissions withheld.

Defendant argues that an award of pre-judgment interest is improper in that plaintiff deliberately concealed his claim, and that this act of the creditor which prevented the defendant from paying the debt precludes plaintiff from an award under S.D.C.L. 21–1–11. I do not agree. That determination would be contrary to the jury's findings which were sufficiently supported by the evidence. Plaintiff's letter of August 28, 1972, provided notice that plaintiff did not accept the unilateral commission cut and that plaintiff planned to continue under the terms of the original agreement. This was supported by additional evidence at trial. In total, the evidence does not reflect or support defendant's assertion of concealment.

This decision permitting pre-judgment interest where the amount owing, although disputed, is easily ascertainable is consistent with other decisions of this Court on the issue of pre-judgment interest. *Peter Kiewit Sons' Company v. Summit Construc-*

*tion Company,* 422 F.2d 242 (8th Cir. 1969); *Aetna Casualty & Surety Company v. United States ex rel. R. J. Studer & Sons,* 365 F.2d 997 (8th Cir. 1966); and *White Motor Corporation v. Northland Insurance Company,* 315 F.Supp. 689 (D.S.D.1970).

For the reasons stated above plaintiff's motion for pre-judgment interest is granted. Counsel is directed to prepare an appropriate order reflecting both the Court's decision denying a new trial or JNOV and granting plaintiff pre-judgment interests. Counsel shall also compute interest owing in accordance with this decision.