**Michael SIMPSON, d/b/a Delta Enterprises, Appellee,**

v.

**NORWESCO, INC., a corporation, Appellant.**

**No. 78–1038.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1978.

Decided Aug. 31, 1978.

Rehearing and Rehearing En Banc Denied Sept. 25, 1978.

---

Edward J. Parker of Lindquist & Vennum (argued), and J. Kevin Costley, Minneapolis, Minn., on brief, for appellant.

Gale E. Fisher of May, Johnson, Doyle, Becker & Fisher, Sioux Falls, S.D., argued and on brief, for appellee.

Before STEPHENSON, Circuit Judge, INGRAHAM,* Senior Circuit Judge, and HENLEY, Circuit Judge.

STEPHENSON, Circuit Judge.

In this diversity action Norwesco, Inc. appeals from the judgment of the district court [1] holding it liable to plaintiff-appellee Michael Simpson for breach of an employment contract in failing to pay commissions due plaintiff.[2] After a three-day trial, the jury returned a verdict of $90,-381.68 in favor of plaintiff Simpson. Following the verdict, the district court granted Simpson's petition for an award of prejudgment interest. On this appeal, Nor-

---

\* The Honorable Joe M. Ingraham, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Honorable Fred J. Nichol, Chief Judge, United States District Court for the District of South Dakota.

2. Simpson has filed a motion to dismiss this appeal upon the grounds that appellant did not properly refer to the judgment of the district court when filing its notice of appeal. In its notice of appeal, Norwesco instead refers to the district court's order denying the motion for judgment notwithstanding the verdict or for new trial. However, the notice Simpson received was adequate to inform him that the decision would be appealed. Consequently, in accordance with a policy of liberal construction of notices of appeal in situations where intent is apparent and there is no prejudice to the adverse party, this court will consider this appeal on its merits. *See Gajewski v. Stevens*, 346 F.2d 1000, 1002 (8th Cir. 1965); 9 Moore's Federal Practice § 203.18 at 752–55.

wesco contends (1) as a matter of law Simpson accepted a modification of his commission rate by continuing to work for Norwesco after notice of the modification; (2) Simpson is estopped by his conduct from claiming past commissions; (3) the jury was improperly instructed on the matter of explicit reservation of rights; (4) exhibit 35 was improperly admitted into evidence; and (5) Simpson is not entitled to prejudgment interest. We affirm.

■ We note that there is some dispute between the parties concerning the factual background of this case. For purposes of this appeal, we, of course, view the record in the light most favorable to sustaining the findings of the jury and must give the prevailing party the benefit of every reasonable inference which may be drawn from the evidence. *Davis v. Burlington N. Inc.*, 541 F.2d 182, 186 (8th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976); *Linn v. Garcia*, 531 F.2d 855, 858 (8th Cir. 1976).

In 1966 Simpson began working for Raven Industries as a fiberglass salesman. He was promoted to sales manager, and in that capacity he met manufacturers of agricultural equipment and sold agricultural spray tanks to customers in the South Dakota area. Rotonics, a division of Norwesco, wanted to establish itself as a spray tank manufacturer and a competitor of Raven Industries. Simpson's expertise and knowledge of area customers were attractive to Rotonics. As a result, on July 28, 1970, Rotonics entered into a written employment contract with Simpson. By this contract, Simpson agreed to act as a manufacturer's representative for polyethylene spray tanks manufactured by Rotonics.

This employment contract provided that Simpson would receive a commission of ten percent on sales of proprietary sprayer tanks, a commission of six percent on sales of custom sprayer tanks, and a commission of six percent on sales to Campbell Manufacturing.[3] The president of Norwesco, David Baldwin, testified that he approved the commission figure of ten percent on proprietary sprayer tank sales because he felt that Norwesco needed Simpson to build up sales in the South Dakota market. In addition, the contract provided that it was "terminable at the will of either party upon six months written notice."

For approximately two years, both parties worked under the contract without serious difficulty. However, shortly thereafter Rotonics began to suffer from a variety of economic problems. Competition in the agricultural sprayer tank market was intense, and in this competitive environment operating deficits in the Rotonics division of Norwesco increased. Evidence at trial suggests that Rotonics suffered from delivery problems and from an unusually high number of defective products. As a response to these economic maladies, Rotonics decided to reduce their operating costs by reducing Simpson's commission rate on proprietary sprayer tanks from ten percent to seven percent. Simpson's commission rate on sales of custom tanks and sales to Campbell Manufacturing was increased from six percent to seven percent, which offset a part of the reduction in commissions. Simpson was informed of this change in his commission rates by a letter from Norwesco president Baldwin dated August 10, 1972.

Simpson replied to Baldwin's letter by a letter of August 28, 1972. After expressing his dissatisfaction concerning general business practices of Rotonics, Simpson closed his letter with the following declaration: "I plan to continue with the same efforts in accordance with the terms of the original agreement." Following the receipt of this letter, Norwesco did not communicate to Simpson that he must either accept the new commission schedule or find other employment.[4] However, Simpson did begin to re-

---

3. At the time of the contract, Campbell Manufacturing was Rotonics' only established customer for these products in the area.

4. In January of 1973 Simpson received a letter from Bob Foerster, an associate of Baldwin at Norwesco, which stated in part: "Relative to

ceive monthly commission statements which reflected the change in commission rates outlined in Baldwin's letter of August 10, 1972.

Despite the reduction in commissions paid to Simpson, Rotonics continued to lose money. The response of management at Norwesco was a second cut in Simpson's commission rate. In September 1974 Simpson's commission rate on proprietary sprayer tanks was cut to five percent, while the commission rate on custom products remained at seven percent. Simpson maintains that he again refused to acquiesce in the newly reduced commission scale. Simpson relies on his letter of August 28, 1972, as his rejection of any reductions in commissions and a reservation of rights under the original employment contract.

In late 1974 there were further negotiations between Norwesco and Simpson. These negotiations focused upon the possibility of a new contract of employment to replace the contract presently in force. Differences between Norwesco and Simpson regarding the life of a new contract, a termination clause, and a covenant not to compete frustrated the negotiations and no new agreement was reached.

Finally, in 1976, Norwesco sold its Rotonics division to Solar, Inc. Shortly thereafter, Simpson received a letter from Baldwin which terminated Simpson's employment. This letter of termination made express reference to the original employment contract of July 28, 1970, and provided six months notice as required by that contract.

After a three-day trial, the jury returned a verdict of $90,381.68 in favor of Simpson. This award of damages represents the difference between Simpson's commissions at the rate agreed upon in the original contract and the reduced commissions actually paid by Rotonics after August 1972. The district court denied Norwesco's motion for a judgment notwithstanding the verdict and granted a petition by Simpson for an award of prejudgment interest. *Simpson v.*

*Norwesco, Inc.,* 442 F.Supp. 1102 (D.S.D. 1977). This appeal followed.

■ Norwesco's first contention is that, as a matter of law, Simpson accepted a modification in his commission rate by continuing to work for the Rotonics division. In the alternative, Norwesco contends that Simpson is estopped by his actions from making a claim for past commissions. In considering these contentions, this court must be guided by Illinois law. The 1970 written employment contract between the parties provided that the agreement would be "construed in accordance with the laws of the State of Illinois." The intention of the parties, as expressed in the contract, to have their agreement construed under Illinois law will be honored. *See Tele-Controls, Inc. v. Ford Inds., Inc.,* 388 F.2d 48, 51 (7th Cir. 1967); *American Serv. Mut. Ins. Co. v. Bottum,* 371 F.2d 6, 11 (8th Cir. 1967).

Norwesco relies heavily on *Weiss v. Duro Chrome Corp.,* 207 F.2d 298 (8th Cir. 1953), in which this court affirmed an Illinois district court's dismissal of an employee's action against an employer for commissions sought under an employment contract. As noted by the district court, *Simpson v. Norwesco, supra,* 442 F.Supp. at 1106, there are two significant distinctions between *Weiss* and the case at bar. In *Weiss,* the original employment contract provided in specific language that the employer reserved the right to change the commission rates with no notice to the employee. Thus, subsequent changes in commission rates made by the employer did not create new agreements, rather, such changes merely carried out the terms of the original agreement. Further, in *Weiss* the employee failed to protest when his commissions were reduced. Unlike the employee in *Weiss,* Simpson's employment contract with Norwesco contained no provision allowing Norwesco to make a unilateral change in Simpson's commission rate. In addition, Simpson protested in writing when his commission schedule was altered.

the commission we will continue under seven percent on all products, no commission on tools. We hope this will finalize our agreement

and give us the thrust for the 1973 year. Please sign and return original." Simpson did not sign or return this letter.

There is no doubt that the parties to a contract may, by their mutual agreement, enter into a new or modified contract and extinguish the obligations of the old contract. However, one of the contracting parties, acting alone, cannot alter his obligation under a contract without the consent of the other party. *York v. Central Ill. Mut. Relief Ass'n,* 340 Ill. 595, 173 N.E. 80, 83 (1930). This principle has been extended to any labor or employment contract. *Sterba v. Blaser,* 33 Ill.App.3d 1, 337 N.E.2d 410, 416 (1975). In the present case, the employment contract between Norwesco and Simpson contained no provision to allow Norwesco to make changes without the agreement of Simpson. The terms of this contract suggest that if Norwesco made changes unacceptable to Simpson, the option would be to either retain the original agreement or terminate the contract by providing six months written notice. When Norwesco first indicated the commission schedule would be changed, Simpson's letter in response stating he was "continuing under the terms of the original contract" was far from any acquiescence in the proposed new commission scale.

Under the Illinois standard, a directed verdict for Norwesco could only have been entered if the evidence, when viewed in the light most favorable to Simpson, had so overwhelmingly favored Norwesco that no contrary result could ever stand. *Cieslak v. Dahlstrom Mach. Works,* 19 Ill. App.3d 995, 312 N.W.2d 654 (1974). The federal standard, requiring that a motion for a directed verdict cannot be granted unless as a matter of law the opposing party failed to make a case, is substantially similar to the Illinois standard. *See Schneider v. Chrysler Motors Corp.,* 401 F.2d 549, 554 (8th Cir. 1968). Because of the similarity of the state and federal standards of sufficiency, it is unnecessary to decide which to apply in the present case. *Id.* at 554. *See generally Twin City Plaza, Inc. v. Central Sur. & Ins. Corp.,* 409 F.2d 1195, 1202 n.8 (8th Cir. 1969). Under either standard, the existence of any modification of the original employment contract created a question of fact. *See Geeslin v. Knight*

*Bros., Inc.,* 554 F.2d 865 (8th Cir. 1977). This question was properly submitted to the jury, and because their finding has adequate support in the evidence, the district court was correct in denying judgment notwithstanding the verdict. *Banks v. Koehring Co.,* 538 F.2d 176, 178 (8th Cir. 1976).

Norwesco suggests that, regardless of Simpson's words of resistance to a change in his commission schedule, Simpson is estopped by his actions from any claim to commissions under the original contract. This contention is based on the fact that Simpson continued to work for Norwesco well beyond the time of his 1972 letter of protest and regularly cashed his commission checks, receiving monthly commission statements which reflected the modified commission rates. We note that in a case with similar facts, *Cieslak v. Dahlstrom Mach. Works, supra,* the Illinois court held that in a suit to recover commissions, once a salesman had voiced his disapproval of a reduced commission rate, the mere cashing of commission checks paid at the reduced rate did not prevent the salesman from claiming the balance due him, when the commission check bore no written indication it was in full settlement of all commission claims. In the present case, Simpson cashed commission checks bearing no written declaration to the effect that acceptance constituted settlement in full of all claims. Further, Simpson had expressed his written disapproval of any reduction in commissions, and his intention to continue work under the old contract. The question of estoppel, on which the jury was instructed, involves fact questions concerning the actions of the parties. Based on the foregoing, this court cannot say that there was not substantial evidence upon which reasonable minds could differ. Therefore, the jury could properly find that there was no estoppel to bar Simpson's recovery. *Banks v. Koehring Co., supra,* 538 F.2d at 178; *see Russ v. Ratliff,* 538 F.2d 799, 804 (8th Cir. 1976). Thus, the district court acted properly in denying judgment notwithstanding the verdict on the issue of estoppel.

Norwesco next contends that the district court erred in instructing the jury on the concept of an explicit reservation of rights. We note that the portion of the instructions to which Norwesco objects was given within the context of an instruction on accord and satisfaction. This doctrine was first raised by Norwesco in its defense. The district court held that the doctrine of accord and satisfaction raises the issue of reservation of rights, and instructed the jury accordingly. *Simpson v. Norwesco, supra*, 442 F.Supp. at 1107. The district court's instructions to the jury also included sections on the modification of contracts, contracts modifiable at will, waiver of contract rights, estoppel and ratification. These instructions amplify and clarify the instructions on accord and satisfaction. Norwesco does not challenge the correctness of these instructions on appeal. Of course, when a portion of a jury instruction is assigned as error, the reviewing court must look to the instructions as a whole. *Fields v. Chicago, R.I. & Pac. R.R.*, 532 F.2d 1211, 1213 (8th Cir. 1976); *Jiffy Mkts., Inc. v. Vogel*, 340 F.2d 495, 500 (8th Cir. 1965). When viewed in the context of all the district court's instructions to the jury, error, if any, in the instructions concerning reservation of rights is harmless error. After careful consideration of the entire record, we find no reversible error in the district court's instructions to the jury.

Norwesco contends that exhibit 35, which was a cartoon which apparently satirized the reduction of a manufacturer's representative's commission rate, should not have been admitted into evidence, and that the cartoon had a prejudicial impact on the jury. No reproduction of this cartoon has been included in the record before this court on appeal. However, the record shows that a copy of this cartoon was exchanged in correspondence between Simpson and Baldwin of Norwesco, and that the cartoon itself was the subject of testimony at trial by Baldwin. In ruling on the admissibility of evidence, the trial court has a wide area of discretion. *General Ins. Co. of America v. Hercules Constr. Co.*, 385 F.2d 13, 24 (8th Cir. 1967). The trial judge is in a position to weigh the exigencies of a particular case, and his discretion when expressed within proper limits will not be disturbed. *General Ins. Co. of America v. Hercules Constr. Co., supra*, 385 F.2d at 24. Based on the foregoing, we cannot say that the trial judge acted beyond the proper limits of his discretion in admitting exhibit 35 into evidence. Furthermore, error, if any, was harmless. *See Koppinger v. Cullen-Schiltz & Assocs.*, 513 F.2d 901, 907 (8th Cir. 1975).

We turn now to the issue of prejudgment interest. Unlike the previous issues involving construction of the contract under Illinois law, any entitlement to prejudgment interest is decided under the law of the state where the cause of action arose. *See Bott v. American Hydrocarbon Corp.*, 458 F.2d 229, 231 (5th Cir. 1972). As conceded by both parties, because this cause of action arose in South Dakota we apply that state's law.

South Dakota law permits the allowance of prejudgment interest. S.D. Compiled Laws Ann. § 21–1–11 (1967) provides:

Interest awarded on damages certain. —Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

If the conditions of section 21–1–11 are satisfied, S.D. Compiled Laws Ann. § 54–3–4 (1967) provides that such interest may be recovered at the rate of six percent per year.

The fact that a claim is disputed does not defeat the allowance of interest. *Beka v. Lithium Corp. of America*, 77 S.D. 370, 92 N.W.2d 156, 159 (1958); *see Corcoran v. Halloran*, 20 S.D. 384, 107 N.W. 210 (1906). Prejudgment interest is allowable if there is an established or reasonably ascertainable market value of the subject matter so that the amount due may be

computed fairly. *Beka v. Lithium Corp. of America, supra,* 92 N.W.2d at 159. In the present facts, the determination of the amount due Simpson involves the simple calculation of the difference in commission due under the original employment contract and the rates actually paid Simpson by Norwesco. This amount, plus prejudgment interest at the rate of six percent, is easily ascertainable within the meaning of South Dakota law. *See generally Peter Kiewit Sons Co. v. Summit Constr. Co.,* 422 F.2d 242, 273 (8th Cir. 1969); *Aetna Cas. & Sur. Co. v. United States,* 365 F.2d 997, 1007 (8th Cir. 1966).

▮ Norwesco argues that Simpson acted to conceal his claim for past commissions from Norwesco, and in effect barred Norwesco from paying any commission debt "by the act of the creditor" within the meaning of S.D. Compiled Laws Ann. § 21–1–11 (1967). The simple answer to this contention is that the jury properly considered Simpson's actions and communications with Norwesco and found that he effectively communicated his rejection of any change in the commission rate. As noted by the district court, any conclusion that Simpson concealed his claim for past commissions so as to prevent Norwesco from making payment is totally inconsistent with this finding. *Simpson v. Norwesco, supra,* 442 F.Supp. at 1108. Thus, the district court's grant of prejudgment interest was proper.

Accordingly, the judgment of the district court is affirmed.

Affirmed.