UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 99-10299

HAROLD EAVENSON and ROBERT L. McDANIEL,

Plaintiffs-Appellants,

VERSUS

AMRESCO, INC.,

Defendant-Appellee.

**************************************

No. 99-10346

HAROLD EAVENSON and ROBERT L. McDANIEL,

Plaintiffs-Appellees,

VERSUS

AMRESCO, INC.,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas
(3:96-CV-338)

April 21, 2000

Before JOLLY and DeMOSS, Circuit Judges, and DAVID D. DOWD, JR.,[*]
District Judge.

DOWD, District Judge:[**]

---

[*]District Judge of the Northern District of Ohio, sitting by
designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that
(continued...)

Before this Court are consolidated appeals of Harold Eavenson and Robert L. McDaniel (hereafter "Plaintiffs") and their former employer Amresco, Inc. (hereafter "Amresco"). Plaintiffs filed suit against Amresco alleging that their employment had been terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Amresco filed two motions for summary judgment which were both denied. Two and one half years after the case had commenced, it was reassigned to the docket of a newly-appointed judge. Amresco sought reconsideration of the denial of its second motion for summary judgment or, in the alternative, it sought summary judgment for a third time. Reconsideration was denied, but the third summary judgment motion was granted on the ground that Plaintiffs had failed to timely file their charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Judgment was then entered in favor of Amresco, but only after the district court permitted filing of an amended answer to conform Amresco's affirmative defenses to the ground on which judgment was granted. Plaintiffs sought post-judgment reconsideration and asked that the record be reopened to permit an opportunity for discovery on the belatedly-raised defense upon which judgment had been granted. The district judge gave reconsideration but denied the request to reopen the record for limited discovery.

---

(...continued)
this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiffs filed their notice of appeal. Thereafter, Amresco filed a separate notice of appeal with respect to the denials of their first two summary judgment motions. The appeals were consolidated. We now vacate summary judgment in favor of Amresco and remand.

I

The factual background relating to the substantive ADEA claims of Plaintiffs is, for the most part, undisputed. The case-dispositive dispute arose over whether the EEOC charges were timely filed. We begin by setting forth the underlying facts and proceedings before the district court.[1]

Amresco was initially a division of NationsBank. Performing under contracts, it managed assets foreclosed all over the country by NationsBank, various other banks, the Federal Deposit Insurance Company ("FDIC"), and the Resolution Trust Company ("RTC"). In 1993, after its sale to outside investors, Amresco became a separate company and the former NationsBank employees became Amresco employees. In 1994, Amresco merged with BEI, a publicly traded company that also managed foreclosed assets and performed other real estate related services. The merged companies continued to operate under the Amresco name.

Because several of Amresco's major contracts were due to expire in late 1994 and early 1995, the volume of its traditional business was decreasing. A new CEO, Robert Lutz, was hired in June

---

[1]We are relating in significant detail what was filed and when, as well as what arguments were raised at various times. This will supply the necessary context for our decision.

1994.  A new CFO, Barry Edwards, was hired in October 1994, after the former CFO was terminated.  Rob Adair, who had previously held the position of President at BEI, served as President of Amresco.

In the late summer of 1994, a task force was appointed to assess the future of Amresco and to evaluate the organization and staffing needs in light of the projected future.  It was ultimately determined that reductions in staff and reassignments were needed.

A letter dated December 13, 1994, was sent to all employees. It stated that the workforce had already been reduced from 2000 to 800 and that "there will be a reduction in staff of approximately 45 people over the next several months in addition to the previously stated ... reduction."  Record, Vol. 2, at 279.[2]  It went on to say that "[t]he employees affected have been or will be notified promptly."  *Id*.  All parties seem to be in agreement,[3] although why is unclear from the record, that this letter signaled the termination of employment for both Plaintiffs effective January 31, 1995.[4]

---

[2]Hereafter, similar references to the record shall indicate the volume and page number as follows:"R2:279."

[3]Repeatedly in the record and the briefs it has been stated that the December 13, 1994 letter announced a reduction in force ("RIF") and that the recipient was on the list of those to be terminated and that January 31, 1995 would be the recipient's last day of employment.  This is not really what that letter said and, in any event, the letter contained no mention of January 31, 1995 as the termination date.  Since all parties seem to be in agreement, however, that the two Plaintiffs were on the "list" for termination, we simply accept that general proposition as true.  As this opinion discusses, precisely when they possessed that knowledge is an issue.

[4]As just noted, it is not clear why the parties all agree that
(continued...)

After their terminations, both Plaintiffs decided they had been victims of age discrimination.[5] Eavenson visited an attorney in July 1995. He did not retain the attorney to represent him; however, he was informed that he should file a charge of discrimination with the EEOC. Both he and McDaniel went together on September 15, 1995 to register their complaint with the EEOC. McDaniel was apparently the first to be interviewed. He claims that the EEOC agent told him he did not have a case and could not file a charge of discrimination. McDaniel went to the waiting room where he told Eavenson what he had learned. Eavenson left without talking to an agent because he believed that, since his potential claim was based on the same facts as that of McDaniel (specifically, the "old bankers" statement overheard in the elevator), he would also be told he could not file a charge.

---

(...continued)
the two Plaintiffs' employment was terminated by the December 13, 1994 letter. The letter itself is simply too general to be read in that fashion. The Court has combed the record and can find no place where either Plaintiff was asked point blank when he actually found out that he was on the "list" for termination. Although both Plaintiffs admit they received the December 13, 1994 letter, by this Court's reading of the letter that admission has virtually no significance. The closest thing the Court has found to suggest that they both knew they were slated for termination is mention of a second memo from someone in the Human Resources Department, also dated December 13, 1994, which purportedly discussed COBRA benefits. *See*, Eavenson Dep. at 41-42, R2:288; McDaniel Dep. at 36, R2:283. From this one <u>might</u> conclude that each Plaintiff knew he was being terminated because he got some information about his COBRA rights.

[5]McDaniel was 50 years old and Eavenson was 56 at the time of the RIF. Allegedly, in October 1994, McDaniel was on an elevator with President Adair and a senior vice president, when Adair, looking directly at McDaniel, purportedly said to the VP that they had to "get rid of the old bankers." This formed the basis of Plaintiffs' belief that age played a role in their terminations.

In early November 1995, Eavenson had a conversation with another attorney. He claims this was the first time he was told that he had to file an EEOC charge before he could file a lawsuit and that he had only 300 days in which to do so. Eavenson went back to the EEOC the very next day, November 7, 1995, and he was allowed to file a charge. Alerted by Eavenson of the need for haste, McDaniel went to the EEOC on November 8, 1995 and filed his charge.

Plaintiffs filed their complaint in the district court on February 5, 1996, expressly alleging that they had each filed a timely charge with the EEOC and had received their right-to-sue letters. Amresco filed its original answer wherein it raised only three affirmative defenses: (1) failure to state claims for which relief could be granted; (2) that Eavenson was terminated because his whole department was eliminated; and (3) that McDaniel was replaced by a person older than McDaniel. In that answer, Amresco stated that it did not have sufficient information to admit or deny whether charges had been timely filed.

Pursuant to the district court's scheduling order, Amresco filed its first motion for summary judgment on February 28, 1997.[6] The motion did not raise the issue of timeliness but simply attacked the Plaintiffs' claims on their merits. This motion was denied by Order dated June 30, 1997. The district judge concluded that a prima facie case had been established and that there were

---

[6]Amresco actually filed two motions, one for each Plaintiff's claims; however, for simplicity, we refer to these motions in the singular.

genuine issues of material fact regarding whether Amresco included Plaintiffs in the RIF based on their ages.  A month later, Amresco filed a motion for reconsideration of the district court's ruling, again with no mention of timeliness.  This motion was also denied. The case was set for trial on November 17, 1997.[7]

On December 8, 1997, with leave of court, Amresco filed a second round of motions for summary judgment.  Once again Amresco attacked only the merits, with no mention of the timeliness issue. The district judge concluded that there were genuine factual disputes precluding summary judgment.  The motion was denied on June 11, 1998, four days before the second trial date.

Once again the trial date passed and the case was rescheduled for trial on September 14, 1998.  However, on August 25, 1998, the case was transferred to the docket of a newly-appointed district judge.  This judge ordered a joint status report.  It was in this report, filed on October 8, 1998, that Amresco raised for the very first time that it was considering "filing [a] Motion for Summary Judgment on a limitation issue and supplementing the Pre-Trial Order[.]"  R1:235.

---

[7]On November 3, 1997, prior to this first scheduled trial date, Amresco filed a motion in limine seeking to exclude any evidence that Plaintiffs had received right-to-sue letters. Amresco argued that receipt of such letters was of no consequence with respect to the merits of Plaintiffs' case  because "[i]f a charge is timely filed, the EEOC must issue all charging parties a right-to-sue letter even if there is no determination regarding the merits of the charge." R1:136 (emphasis added).  Amresco's motion could be read as conceding timeliness.  The district court, however, never had occasion to rule on the motion since it did not reach the trial and rescheduled it for June 15, 1998.

On November 30, 1998, the trial was once again continued to January 4, 1999. On December 3, 1998, one month before this fourth trial date, Amresco filed a motion seeking reconsideration of the denial of its second summary judgment motion or, in the alternative, a third summary judgment motion based on the issue of the timeliness of the EEOC charges. On this latter issue, Amresco asserted that Plaintiffs had failed to file their EEOC charges within the statutory time limit, i.e., within 300 days of December 13, 1994. Plaintiffs objected to the filing of this motion on the eve of trial. Thereafter, the court allowed the filing and set up an expedited briefing schedule.[8]

Plaintiffs' response to this "johnny-come-lately" motion contained their separate affidavits asserting that they had both attempted to file charges with the EEOC on September 15, 1995 and had been rebuffed, but that, in any event, even after December 13, 1994, they had each had good reason to believe that the employment decision was being reconsidered by the company and that they did not definitively know they were terminated until January 31, 1995.

Amresco made no specific reply to these latter assertions, arguing only that the official EEOC records reflected no visit by the Plaintiffs in September 1995 and that the Plaintiffs could not

---

[8]While that schedule was playing out, Amresco apparently recognized the significant factual dispute which it had belatedly raised. It filed amended proposed jury instructions and questions, adding two questions for the jury regarding whether each plaintiff "was informed on or before January 1, 1995, that his employment would be terminated." R2:320-21.

8

avail themselves of equitable tolling because they had consulted an attorney as early as July 1995.

The district judge cancelled the trial and set the third motion for summary judgment for argument on January 4, 1999. In a ruling issued four days after the hearing, the district court denied reconsideration of the second motion for summary judgment, expressly concluding, as had the first district judge assigned to the case, that there were genuine issues of material fact in dispute and that a reasonable jury could find for either party.[9] However, the district court then granted Amresco's third summary judgment motion,[10] with the understanding that final judgment would be deferred for a few days to allow Amresco the opportunity to amend its answer to include the affirmative defense upon which summary judgment had been granted.[11] This Amresco did and, on

---

[9]We note that this was the _fourth_ time the claims had survived on the merits: twice on initial summary judgment motions and twice on reconsideration motions.

[10]In his Memorandum Opinion and Order of January 8, 1999, the district judge declared that Plaintiffs' affidavits in support of their position were conclusory, containing no more than their subjective beliefs without any specifics as to why they held those beliefs. He stated that "the record is devoid of any evidence that the decision to terminate Plaintiffs on December 13, 1994 was tentative." R2:403. He concluded that because "the deadline for Plaintiffs to file charges with the EEOC was October 9, 1995[ ] ... Plaintiffs filings ... were not timely." _Id_.

[11]Although the court noted that Amresco had failed to plead the limitations defense, in his view, since it had been raised in the third motion for summary judgment and in a December 21, 1998 joint pretrial order submitted to the court, Plaintiffs "were given ample time to respond to this issue ... and [had] presented no evidence" that they could ever defeat the limitations defense. R2:407. The court concluded that Plaintiffs would not be prejudiced by allowing Amresco to amend its answer to add the affirmative defense. The
(continued...)

9

January 19, 1999, the district court entered final summary judgment in Amresco's favor, taxing costs against the Plaintiffs.

On the same day that the Judgment was entered against Plaintiffs, they filed a motion to reopen the summary judgment record, for reconsideration, and for discovery of the facts surrounding the limitations defense. Plaintiffs asserted that the district judge had improperly failed to draw all inferences in their favor and pointed to specific deposition testimony that created a material factual dispute. The district court then ordered a hearing on Plaintiffs' motion, accusing Plaintiffs of "misconstru[ing] the court's opinion" and warning them not to be "unnecessarily dramatic." R3:511. The court ordered Plaintiffs to put in writing the specific discovery they needed, which Plaintiffs did.[12]

On March 17, 1999, the district judge denied Plaintiffs' motion to reopen discovery and, in a reconsidered analysis of the

_____

(...continued)
judge, therefore, ruled in Amresco's favor stating that "based on the assumption that Defendant will file an amended answer by 5:00 p.m., January 11, 1999 as directed, the court will later enter judgment by separate document."  R2:408.

[12]Plaintiffs specified that they wanted to depose Lutz and re-depose Edwards regarding events between December 13, 1994 and January 31, 1995, matters which had not previously been raised because there had been no issue taken with timeliness, and that they wanted to give Amresco the opportunity to test the facts they had asserted in their recent affidavits regarding their beliefs that the decision to terminate them was being reviewed during that time frame.  They also sought to do limited discovery about the specifics of their claim that they had been rebuffed by the EEOC on September 15, 1995.

summary judgment ruling,[13] affirmed its previous declaration that December 13, 1994 was the date of the adverse employment action requiring an October 9, 1995 filing of EEOC charges. The district court adhered to its original decision that Plaintiffs were not entitled to equitable tolling and that their claims were time-barred.

## II

On appeal, Plaintiffs challenge the district court's ruling on the third motion for summary judgment and assert that the court abused its discretion by refusing to reopen the record to allow discovery on the timeliness issue. In response, Amresco asserts that this Court lacks jurisdiction to review the January 8, 1999 summary judgment order or the January 19, 1999 final judgment because these matters are not specified in Plaintiffs' notice of appeal. In its own appeal, apparently filed as a precautionary measure, Amresco challenges the denial of the first two summary judgment motions.

We shall first address the scope of this Court's jurisdiction, followed by a discussion of the issues raised in Plaintiffs' appeal, and then by a brief discussion of the issue in Amresco's appeal.

## A

[13]The court specified that it had reviewed "the motion and briefs, the response, the reply, the specification, the arguments of counsel, the previously filed pleadings, and the applicable authority[.]" R3:524.

Plaintiffs' notice of appeal, filed on March 19, 1999, states that they are "appealing from the judgment of the District Court dated March 16, 1999, which denied Plaintiffs' Motion for reconsideration, to reopen the summary judgment record and permit further discovery, following the Courts [sic] granting of Defendant's Motion for Summary Judgment by Order dated January 19, 1999." R3:534.[14]

Amresco argues that Plaintiffs' appeal can only be from the ruling issued by the district court in March 1999, and cannot address the Memorandum Opinion and Order of January 8, 1999, or the Judgment of January 19, 1999. Amresco holds the view that, under Fed. R. App. P. 3, Plaintiffs are bound by the language of their notice of appeal. *See C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir.), *cert. denied*, 454 U.S. 1125 (1981) (although Rule 3 is interpreted liberally, "[w]here the appellant notices the appeal of a specified judgment only or a part thereof ... this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal").

Plaintiffs do not directly address Amresco's position; rather, they characterize the actions of the district court in reconsidering its judgment of January 19, 1999, as implicitly setting aside that judgment. They rely on the fact that the

---

[14]The appealed Order was signed by the district judge on March 16, 1999, but filed (and entered on the docket) on March 17, 1999. Since a court can speak only through its record, the filing date is the official date of the Order.

12

district court conducted a hearing on their motion to reopen the summary judgment record and ultimately wrote a new opinion on the limitations issue.

The Federal Rules of Civil Procedure make no provision for "motions for reconsideration" much less for "motions to reopen." However, such motions may be treated by a court as either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment. A Rule 59(e) motion must be filed no later than ten (10) days after the entry of judgment. A Rule 60(b) motion "shall be made within a reasonable time [but] not more than one year after the judgment, order, or proceeding was entered or taken." Either type of motion suspends the time for filing an appeal until the district court rules on the motion. Fed. R. App. 4(a)(4).

Plaintiffs' Motion to Reopen the Summary Judgment Record, for Reconsideration, and to Permit Discovery on the Issue of Limitations was filed on the very day the Judgment was entered. Therefore, this Court need not consider whether it was (or should have been) treated by the district court as a Rule 59 or a Rule 60 motion.[15] Either way, it is properly viewed under Fed. R. App. 4

---

[15]The file-stamp used by the Clerk contains only the date of filing, without the time. Therefore there is no way to determine whether Plaintiffs' motion was actually filed before or after the Judgment. The district court later ruled, based on the order that the documents appeared on the docket of the Clerk, that the motion was a post-judgment motion. We merely note that, since it is not all that hard to manipulate the order of documents received and manually docketed, it might be a better practice to use a file-stamper that contained a time indicator so that documents could be entered on the docket in both time and date order.

as tolling the time for filing an appeal. Once the motion was resolved on March 17, 1999, the time for filing the notice of appeal began to run again. Therefore, Plaintiffs' notice of appeal filed on March 19, 1999, was timely under Fed. R. App. P. 4.

The next question relates to <u>what</u> was actually appealed: only the March 17 Order or also the Order of January 8 and the Judgment of January 19, 1999? The liberal view expressed by case law in this circuit, including the two cases relied upon by the Amresco, allows review of both the March Order and the January Order/Judgment.

In *C.A. May Marine Supply Co.*, *supra*, a panel of this Court stated:

> Generally a notice of appeal "shall designate the judgment, order or part thereof appealed from." Fed.R.App.P. 3(c) (1980). However, a policy of liberal construction of notices of appeal prevails in situations where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party. *Simpson v. Norwesco, Inc.*, 583 F.2d 1007, 1009 n.2 (8th Cir. 1978). The party who makes a simple mistake in designating the judgment appealed from does not forfeit his right of appeal where the intent to pursue it is clear. *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 738-39 n.1 (5th Cir. 1980). *See Hammond v. Public Finance Corporation*, 568 F.2d 1362 (5th Cir. 1978); *Jones v. Chaney & James Construction Company*, 399 F.2d 84 (5th Cir. 1968); *Markham v. Holt*, 369 F.2d 940 (5th Cir. 1966). Also, where claims or issues are inextricably entwined, each may be reviewed even though not referred to in the notice of appeal. *Marshall v. Kirkland*, 602 F.2d 1282, 1302 n.17 (8th Cir. 1979). *See also Comfort Trane Air Conditioning v. Trane Co.*, 592 F.2d 1373 (5th Cir. 1979); *In re Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977). This circuit tends to

14

> be more lenient than other circuits in this respect.
>
> Where the appellant notices the appeal of a specified judgment only or a part thereof, however, this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal. *See Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252 (3d Cir. 1977); *Symons v. Mueller Co.*, 526 F.2d 13 (10th Cir. 1975).

649 F.2d at 1056.

Plaintiffs' notice of appeal identifies the March 16, 1999 "judgment" as the order appealed from;[16] however, it also makes express reference to the judgment dated January 19, 1999. Since the March order dealt with a motion seeking reconsideration of the court's earlier granting of summary judgment, reference in the notice of appeal to the earlier judgment on a January 8, 1999 opinion and order is sufficient.

Under the circumstances of this case, a liberal construction of the law justifies our review of both the March order (which indisputably <u>is</u> on appeal) and the January Order and Judgment. Amresco is not prejudiced by such review.

                                   B

A district court's grant of summary judgment is reviewed *de novo*, applying the same standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[16]*See* note 14, *supra*, regarding the date discrepancy.

15

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the record, any factual inferences are drawn in favor of the non-moving party. *United States v. Arron*, 954 F.2d 249, 251 (5th Cir.), *reh'g denied*, 957 F.2d 869 (5th Cir. 1992). A summary judgment may be reversed if the appellant shows "that a genuine fact issue exists that is material to the outcome of the dispute." *Id*. "A fact is material if it might affect the outcome of the suit under the governing substantive law." *Id*.

"Control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Mayo v. Tri-Bell Industries, Inc.*, 787 F.2d 1007, 1012 (5th Cir.1986); *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548-49 (5th Cir.1985). If discovery could uncover one or more substantial fact issues, a party is entitled to reasonable discovery to do so. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir.), *reh'g en banc denied*, 707 F.2d 515 (5th Cir. 1983). "Generally, a ruling that denies a party an adequate opportunity to discover facts to oppose a motion for summary judgment is unreasonable if summary judgment is subsequently entered against that party." *Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 382 (5th Cir. 1987).

The difficulty in this case was created largely by Amresco's filing of "rolling" summary judgment motions. Dissatisfied with the district court's repeated determinations against it, Amresco kept coming up with new arguments until it finally managed to "ring

16

the bell" by raising the timeliness issue in its <u>third</u> motion for summary judgment. By that time, the deadline for completing discovery had long since passed.[17] Never presented with a need to do so, Plaintiffs had not conducted any discovery on the timeliness issue. Therefore, the best they could do in the face of this third motion filed on the very eve of trial was just what they did: submit their personal affidavits attesting to the facts as they knew them.[18] Based on those facts, Plaintiffs argued that December

_____

[17]The district court's orders set the discovery deadline for March 3, 1997. The third motion for summary judgment was filed on December 3, 1998.

[18]Eavenson's affidavit (R2:336-45) asserted the following: (1) that he and McDaniel had gone to the EEOC office on September 15, 1995, as shown by his attached appointment calendar page for that day; (2) that McDaniel, after first speaking to an agent, told Eavenson the agent said they did not have a claim and there was no need to sign any paperwork; (3) that he (Eavenson) decided it would be futile to talk to an agent since he had the very same facts as McDaniel, who had already been turned away by the agent; (4) that after later learning there was a time limit for filing charges, he returned to the EEOC, was interviewed by a different agent, and was permitted to file a charge; (5) that he told McDaniel to go promptly to the EEOC to file his charge; (6) that, since neither he nor McDaniel had hired a lawyer until some time in 1996 after they received their right to sue letters, neither one of them knew in September of 1995 whether or not they had a legitimate age discrimination claim; (7) that between December 13, 1994 and January 31, 1995, he had conversations with Barry Edwards and Robert Lutz which led him to believe that they were still evaluating whether he should be retained with the company; (8) that between December 13, 1994 and January 31, 1995, he was aware that several other company officials were questioning how certain tasks would ever be accomplished if the company closed his department; and (9) that he was aware that, after December 13, 1994, the company had changed its mind about the terminations of some employees.
McDaniel's affidavit (R2:347-52) asserted the following: (1) that he was interviewed on September 15, 1995 by a female EEOC agent who told him that he did not have a case and that he could not file a charge of discrimination based on what he had recounted; (2) that he and Eavenson had decided to leave the EEOC office based
(continued...)

17

13, 1994 was not the date of the adverse employment action but that, even if it were, they were entitled to equitable tolling of the 300-day time limit for filing their EEOC charges for either of two reasons: (1) because after December 13, 1994, Amresco executives had led each Plaintiff to believe that the termination decision with respect to each of them was not yet final, and (2) because the Plaintiffs had been misled by an EEOC agent who, on September 15, 1995, told them they could not file charges, an error which Plaintiffs did not then detect until early November 1995, when they promptly <u>did</u> file charges.

In a somewhat lengthy opinion filed March 17, 1999, the district court reexamined and ultimately adhered to its earlier decision to grant Amresco's third motion for summary judgment. In doing so, the court relied in part on *Delaware State College v. Ricks*, 449 U.S. 250 (1980), where the Supreme Court held that the filing limitations period[19] commences at the time the employment

---

(...continued)
on what the agent told him; (3) that, in November 1995 after Eavenson called and told him that he needed to act quickly because a time limit was about to run out, he went again to the EEOC and spoke with a different agent who helped him file his charge; (4) that in January 1995, he had conversations with Barry Edwards and Robert Lutz which led him to believe they were reconsidering the decision to terminate his employment; (5) that he was aware that some people who had been selected for termination were instead going to be retained because the company had changed its mind; and (6) that he knew the company was planning to expand in certain areas in which he had many years of experience, buttressing his belief that he might not be terminated.

[19]Under 29 U.S.C. § 626(d), in a deferral state such as Texas, an age discrimination charge must be filed within 300 days after the alleged unlawful act occurred. Failure to timely file a charge does not necessarily prevent a party from pursuing an action in
(continued...)

18

decision has been both made and communicated to the employee. *Id*. at 258. The *Ricks* Court recognized that determining timeliness requires two things: (1) identification of the unlawful employment act; and (2) identification of the date when that act occurred. Here, the first element was not in dispute, whereas the second one <u>was</u> a point of contention.

The district court declared the record <u>"unequivocally clear"</u> and made the factual determination "that Defendant's management did not alter its [December 13, 1994] decision to terminate Plaintiffs[.]" R3:527 (emphasis added). It therefore upheld its earlier decision that "the limitations period began to run on that date" and found "no reason to reopen and allow any further discovery regarding that issue." *Id*.

---

(...continued)
federal court. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.") (footnote omitted). The burden is on the plaintiff to demonstrate a factual basis for equitable tolling. *Blumberg v. HCA Management Co.*, 848 F.2d 642, 644 (5th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989).

> We have held equitable tolling to apply in the following situations: (1) during the pendency of an action before a state court that has jurisdiction over the subject matter of the suit, but that is the wrong forum under state law; (2) until the claimant knows or should know the facts giving rise to her Title VII claim; and (3) when the EEOC misleads the claimant about the nature of her rights under Title VII. *See Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302 (5th Cir.1979). We have indicated that circumstances besides these might merit equitable tolling. *See Blumberg*, 848 F.2d at 644-45.

*Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999).

19

Plaintiffs have apparently never denied that they were told on December 13, 1994 that their positions would be terminated. At issue here is whether that decision, although communicated, was actually firmly made, that is, whether it was final and understood as final by all concerned within the meaning of *Ricks*. The fact that Defendant's management ultimately did not alter its decision to terminate Plaintiffs does not mean that there could not have been reason for Plaintiffs to believe that the "decision" was under reconsideration. It is possible that Defendant's management could have engaged in behavior which engendered such a belief. If so, equitable tolling of the time for filing EEOC charges would be in order.[20] The district court improperly denied the requested discovery which might have clarified the facts surrounding this issue, with the result that it misapplied the "made and communicated" test of *Ricks*.[21]

---

[20]There are really two ways of looking at this: either the adverse employment decision did not occur until January 31, 1995, which then triggered the running of the limitations period, or although the decision occurred on December 13, 1994 and the limitations period should have begun to run on that date, the period was tolled by management's actions which misled Plaintiffs into believing that the decision was not final.

[21]Although the district court made its determination on the incomplete record before it, there was still a significant amount of evidence to suggest the error of summary judgment. For example, the following appears in the record to support a conclusion that there was a material factual dispute, sufficient to support the need for some limited discovery, regarding whether Amresco's decision to terminate the Plaintiffs was really definite on December 13, 1994: (1) the deposition testimony of Edwards that (a) he does recall having conversations with McDaniel after December 13, 1994, where he expressed concern that Amresco, in its haste, was letting too much talent like McDaniel's escape (R4:068), and (b) he met with Eavenson several times between December 13,

(continued...)

20

When the limitations period began to run was not the only point of contention. Plaintiffs also asserted that the period was subject to equitable tolling because they had been misled by the EEOC in September 1995 and did not discover that fact until November 1995. Materials submitted by the Plaintiffs indeed supported both this possibility and the fact that they had not actually obtained legal advice which would have alerted them to the true nature of their rights.[22]

(...continued)

1994 and January 31, 1995 to discuss Eavenson's suggestion that, because his department added value going forward, he and at least one other employee from the department should be retained (R4:072); (2) deposition testimony of Adair that although an employee by the name of Andrus had been slated for the RIF, Edwards had changed that decision and transferred him to another department, making him treasurer of the company (R4:087); (3) Eavenson's affidavit that several people in the organization were concerned about how they would receive the services his department had offered, coupled with his awareness that during the relevant time period Amresco was taking no steps to provide for those services although it would certainly need the services even if he were terminated, which led him to believe the decision was not final (R2:339-40); and (4) McDaniel's affidavit that (a) he had a conversation with Lutz (who had never been deposed) during January 1995 where Lutz also expressed concern over losing talent and left McDaniel with the impression that his termination would be reconsidered (R2:348-49), and (b) he was aware that Amresco planned to expand in the very areas where he had over 30 years of expertise (R2:349). The district court dismissed all of this evidence, stating: "Based upon Plaintiffs' own affidavits and the deposition of a senior management official of Defendant, [Plaintiffs] held a tenuous belief on their part that the termination decision might be reversed." R3:527 (emphasis in original).

[22]For example, in addition to the facts attested to in affidavits filed in support of their opposition to the third summary judgment motion, *see*, note 18, *supra*, additional facts contained in a subsequent affidavit (R2:424-26) filed in support of their post-judgment motion offer further clarification. There, Eavenson acknowledged that in July 1995 he had spoken with an attorney who told him to go to the EEOC. However, he characterized that discussion as "not detailed." He reiterated that he "was not

(continued...)

21

Plaintiffs absolutely were prejudiced by a complete inability to conduct discovery on the significant factual disputes related to the timeliness issue. Prior to Amresco's belated third motion for summary judgment, there had been no incentive to pursue discovery on this issue. Under these circumstances, the district court abused its discretion by failing to permit the limited discovery sought by the Plaintiffs, including when the period began to run and whether that period was equitably tolled by subsequent events.[23]

Accordingly, we vacate the district court's grant of Amresco's third motion for summary judgment and we remand for further proceedings consistent with this opinion.[24]

_____

(...continued)
informed by anyone and did not know until November 1995 that the filing of a formal Charge was a prerequisite to the filing of a suit nor did [he] know that there was a three hundred (300) day deadline in doing so until November 1995." R2:425. Eavenson also acknowledged that in November 1995, after learning from "someone" that he must file a formal charge, he contacted an attorney to confirm that fact.

[23]Perhaps Plaintiffs could have assisted the process by seeking some limited discovery under Fed. R. Civ. P. 56(f) before the district court actually ruled on the third motion for summary judgment. *See Exxon Corp. v. Crosby-Mississippi Resources, Ltd*, 40 F.3d 1474, 1487 (5th Cir. 1995) (the party moving for a continuance of discovery should "request extended discovery prior to the district court's ruling on summary judgment"). However, it is completely conceivable that Plaintiffs were trying their best to respond to an untimely argument regarding timeliness while hoping to preserve their January 4, 1999 trial date, the fourth date set for the trial of a matter filed almost three years earlier. This one strategic slip on Plaintiffs' part should not doom their lawsuit and their legitimate post-judgment request for some discovery.

[24]We note that, in the event limited discovery reveals that Plaintiffs hold one view of the facts and Amresco's decision-makers hold another, this is the very stuff of trials. In that case, there would be a genuine issue as to material facts, rendering
(continued...)

C

In view of our disposition of Plaintiffs' appeal on the question of discovery related to timeliness, we need not address Amresco's challenge to the district court's two denials of summary judgment. It is textbook law that this Court generally has jurisdiction to review only final orders. 28 U.S.C. § 1291. A denial of summary judgment does not fall into the category of a final order. *Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999); *Francis v. Forest Oil Corp.*, 798 F.2d 147, 149 (5th Cir. 1986).

Accordingly, Amresco's appeal must be dismissed for lack of jurisdiction.

III

For the reasons set forth above, we VACATE the district court's grant of summary judgment to Amresco and we REMAND for further proceedings. In addition, we DISMISS Amresco's appeal.

---

(...continued)
summary judgment improper. Further, our disposition today does not, of course, rule out the possibility that it may ultimately be decided that the EEOC charges were not timely filed.